[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-14824

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 2, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-20422-CV-JLK

BAVARO PALACE, S.A., a foreign corporation,

Plaintiff-Counter-
Defendant-Appellant,

BAVARO BEACH, S.A., a foreign corporation, et al.,

Plaintiffs-
Counter-Defendants,

versus

VACATION TOURS, INC.,
a.k.a. Vacation Store of Miami, Inc.,
VACATION TOURS OF SOUTH BEACH, INC.,
a dissolved Florida corporation,
ROSANNA METZ-MENDEZ,
an individual,
ALEXANDRA ALVAREZ,
an individual,

Defendants-Counter-
Claimants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

**(October 2, 2006)**

Before TJOFLAT and CARNES, Circuit Judges and HODGES,[*] District Judge.

CARNES, Circuit Judge:

The plaintiff, Bavaro Palace, appeals the district court's entry of final judgment on all claims in favor of the defendants, Vacation Tours and Rosanna Metz-Mendez. The entry of judgment followed a bench trial. We affirm the district court on the Lanham Act and Anticybersquatting Consumer Protection Act claims, but we vacate the district court's decision on the Florida Deceptive and Unfair Trade Practices Act claim and remand for entry of fact findings and conclusions of law in compliance with Rule 52(a) of the Federal Rules of Civil Procedure.

**I.**

The Barceló Bavaro Palace is one of five hotels in a complex known as the Barceló Bavaro Beach Resort located on Bavaro Beach in the Punta Cana region of

_____

[*] The Honorable William Terrell Hodges, United States District Judge for the Middle District of Florida, sitting by designation.

the Dominican Republic.  Opened in 1992, the hotel is part of an international chain owned and operated by the plaintiff, Bavaro Palace, S.A.  The Barceló Bavaro Palace is marketed under a two-tier advertising system.  The first tier targets corporate clients and involves the distribution of pamphlets, brochures and promotional videos.  The second tier of promotion is through "co-op marketing" where authorized distributors work together to market certain hotels using printed ads, brochures, television and radio.  In the joint pretrial stipulations, the parties agreed that the proper name of the hotel is "Barceló Bavaro Palace."

Vacation Tours is a wholesale and retail travel agency offering travel packages to the Dominican Republic and other locations.  It has offices in both Miami Beach and Coral Gables, Florida.  In past years, Vacation Tours contracted with the plaintiff's parent company to become an authorized distributor for accommodations at the Barceló Bavaro Palace.  Those contracts ended sometime between 2002 and 2003.  While Vacation Tours is no longer an authorized dealer for the plaintiff, it is for several hotels in the area that compete with the plaintiff. Even after the distributorship agreement dissolved, Vacation Tours continued to book rooms at the Barceló Bavaro Palace for its customers through other agencies, such as Hotel Beds and Go Go Tours.

The plaintiff claims that Vacation Tours engaged in a "bait and switch"

3

scheme whereby it would convince customers who specifically requested a Barceló brand hotel to reserve rooms with a competing property instead. The trial court, however, found that Vacation Tours honored specific customer requests, even if it meant booking a hotel that it did not promote.

In 2001 a consultant for Vacation Tours registered the domain name bavaropalace.com to advertise the Barceló Bavaro Palace and competing hotels on Bavaro Beach. The website lists the phone numbers for Vacation Tours. Clicking on the individual hotels also directs browsers to Vacation Tours' phone numbers. Vacation Tours does not use the term "bavaropalace.com" as any part of its business name.

On February 1, 2004, Vacation Tours ran a series of advertisements in The Miami Herald and El Nuevo Herald for tour packages that included accommodations at the Barceló Bavaro Palace. The advertisements included Vacation Tours' phone numbers and the web address, bavaropalace.com. Two days later, a promotions and marketing representative for the plaintiff traveled from the Dominican Republic to Miami to meet with Rosanna Metz-Mendez, the president, chief officer, and sole director of Vacation Tours. The representative asked Metz-Mendez to stop running the print ads, and she agreed. The parties dispute whether the representative also asked Metz-Mendez to discontinue use of

the web address.  The plaintiff asserts that he did but Metz-Mendez denies that.

On February 5, 2004, the ad again ran in The Miami Herald.  The plaintiff sent a cease and desist letter on February 11, 2004, demanding that within two days of receipt Vacation Tours send written confirmation that it had stopped using the bavaropalace.com web address.  Vacation Tours did not respond to the letter and continued to use the domain name.

On February 20, 2004, the plaintiff filed a complaint against Vacation Tours and Metz-Mendez, alleging, among other things, violations of the Lanham Act, the Anticybersquatting Consumer Protection Act, and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").  Vacation Tours filed a counterclaim, but it was voluntarily dismissed during trial.  After a three day bench trial, the court entered judgment in favor of the defendants on all claims.  The district court found that the plaintiff failed to introduce evidence at trial indicating that the hotel was advertised or promoted as "Bavaro Palace" without the "Barceló" modifier.  All marketing materials offered by the plaintiff referred to the hotel as the "Barceló Bavaro Palace," and that is how the hotel is known in the industry.  The district court found no evidence that the hotel had ever been marketed under the name "Bavaro Palace."

The district court concluded from the evidence that "Bavaro Palace" was a

descriptive mark, composed of the geographic term "Bavaro," which refers to a specific segment of beach, combined with the generic industry term "palace," which means an upscale hotel. The court reasoned that the plaintiff could not prevail on its Lanham Act claim because it could show neither secondary meaning nor likelihood of confusion. The court also determined that the plaintiff had failed to prove any of the elements necessary for its Anticybersquatting Consumer Protection Act claim. Although the district court failed to discuss the FDUTPA claim in its opinion, it did enter judgment for Vacation Tours on all counts.

## II.

We review a district court's conclusions of law <u>de novo</u>, and we review findings of fact for clear error. <u>MiTek Holdings, Inc. v. Arce Eng'g Co., Inc.</u>, 89 F.3d 1548, 1554 (11th Cir. 1996). Rule 52(a) requires that the facts be found specifically and that the conclusions of law be stated separately; the purpose of those requirements is to "provide a sufficiently definite predicate for proper appellate review." <u>Hydrospace-Challenger, Inc. v. Tracor/MAS, Inc.</u>, 520 F.2d 1030, 1033–34 (5th Cir. 1975).

## III.

### A.

The Lanham Act unfair competition claim arises under 15 U.S.C. § 1125(a).

In order to establish a protect able mark, a plaintiff must show that the mark is either inherently distinctive or has acquired secondary meaning. Montgomery v. Noga, 168 F.3d 1282, 1300 (11th Cir. 1999). Because the mark in this case was not inherently distinctive, the plaintiff's case depended on showing that it had secondary meaning, defined as "the connection in the consumer's mind between the mark and the product's producer." Gift of Learning Found., Inc. v. TGC, Inc., 329 F.3d 792, 800 (11th Cir. 2003).

We have held that the "[p]laintiff has the burden of sustaining a high degree of proof in establishing a secondary meaning for a descriptive term." Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C., 931 F.2d 1519, 1525 (11th Cir. 1991). There are four factors to consider in determining whether a mark has acquired secondary meaning: "(1) the length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's product or business; and (4) the extent to which the public actually identifies the name with the plaintiff's product or venture." Conagra Inc. v. Singleton, 743 F.2d 1508, 1513 (11th Cir. 1984).

The district court properly determined that the actual protect able name is "Barceló Bavaro Palace," while the asserted mark, "Bavaro Palace," is merely

7

descriptive. "Bavaro" refers to a specific section of beach in the Punta Cana area of the Dominican Republic, and "Palace" is a common industry term for a high-end hotel. The district court concluded that the plaintiff had failed to establish the necessary consumer connection between the mark and the hotel, as all marketing materials and even the sign on the hotel itself read "Barceló Bavaro Palace" not "Bavaro Palace." There is simply no secondary meaning in the mark "Bavaro Palace."

We see no clear error in the district court's determination that both the industry and the public at large know the hotel as the "Barceló Bavaro Palace," nor in its conclusion that there is no protect able interest in the asserted mark "Barceló Palace. Because there was no protect able interest in the asserted mark, the consumer confusion analysis is immaterial. Gift of Learning Found., 329 F.3d at 801("The confusion that plaintiff claims exists is irrelevant unless the mark is protect able in the first instance.").

B.

The district court did not err in rejecting the plaintiff's Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), claim. To prevail under the ACPA, a plaintiff must prove that (1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly

8

similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit. Shields v. Zuccarini, 254 F.3d. 476, 482 (3d Cir. 2001).

The district court did not clearly err in the fact findings underlying its conclusions that the plaintiff had not proven any of the three elements necessary to make out a viable ACPA claim. Any error in the district court's thinking that a mark must be both distinctive and famous for these purposes is harmless. The plaintiff failed to prove that the mark "Bavaro Palace" was either distinctive or famous, and as we have noted, it is not entitled to protection as a descriptive mark. Nor did the plaintiff establish that "bavaropalace.com" was confusingly similar to "Barceló Bavaro Palace" or that Vacation Tours acted with bad faith. The district court properly dismissed this claim.

C.

The district court also entered judgment against the plaintiff on the FDUTPA claim. Because the court did not explain its reasoning, however, we do not know the basis for its ruling.

The Florida statute protects against any "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Fla. Stat. Ann. § 501.204(1) (West 2006).

9

We said in Gift of Learning, 329 F.3d at 802, that a FDUTPA claim fails where the plaintiff is unable to show a protect able mark, but that case focused on trademark infringement and did not involve any allegations of a "bait and switch" scheme. Id. at 797.  A Florida court has yet to apply this statute to facts like these.

Still, this Court noted parenthetically in Gift of Learning "that the analysis of the Florida statutory and common law claims of trademark infringement and unfair competition is the same as under the federal trademark infringement claim." Id. at 802 (citing Investacorp Inc., 931 F.2d at 1521); see also Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1193 n.4 (11th Cir. 2001) ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims.").  FDUTPA specifically notes that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts," Fla. Stat. Ann. § 501.204(2) (West 2006).

The Code of Federal Regulations defines "bait advertising" as:

> an alluring but insincere offer to sell a product or service which the advertiser in truth does not intend or want to sell. Its purpose is to switch consumers from buying the advertised merchandise, in order to sell something else, usually at a higher price or on a basis more advantageous to the advertiser. The primary aim of a bait advertisement is to obtain leads as to persons interested in buying merchandise of the type so advertised.

16 C.F.R. § 238.0 (2006).  Additionally, the Florida legislature's purpose in

10

drafting FDUTPA may guide the district court's decision about this claim. The statute was enacted "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. Ann. § 501.202(2) (West 2006).

Because the district court failed to set out findings of fact about the allegations that Vacation Tours ran a "bait and switch" scheme and did not specify the conclusions of law underlying its decision about that claim, we vacate the part of the decision disposing of the FDUTPA claim and remand it for compliance with Rule 52(a).

The judgment of the district court is **AFFIRMED** insofar as it concerns the Lanham Act and Anticybersquatting Consumer Protection Act claims, but it is **VACATED** insofar as it concerns the Florida Deceptive and Unfair Trade Practices Act claim, and the case is **REMANDED** for further proceedings related to that claim as specified in this opinion.