[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12424
Non-Argument Calendar
_____

D.C. Docket No. 4:13-cv-10113-JLK

TROPIC OCEAN AIRWAYS, INC.,

Plaintiff - Appellant,

versus

JULIE FLOYD,
KEY WEST SEAPLANE SERVICE, INC.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 30, 2014)

Before HULL, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Plaintiff Tropic Ocean Airways ("Tropic") appeals the district court's dismissal with prejudice of its cybersquatting lawsuit against defendants Key West Seaplane Service, Inc. ("Key West") and Dr. Julie Floyd ("Floyd").  Because Tropic has failed to state a claim for relief, we affirm.

I.

This lawsuit arises out of a dispute about the registration and ownership of the internet domain name tropicoceanairways.com.  Tropic is a charter air company operating under the name "Tropic Ocean Airways" that has provided flights from Florida to the Caribbean since March 2011.  Tropic advertises its services on the website flytropic.com using the name "Tropic Ocean Airways." Key West, a competitor of Tropic, operates a private charter and commercial airline.  In March 2012, Key West, through its president Floyd, registered the domain name tropicoceanairways.com.

Tropic sued Key West and Floyd contending that their registration and control of tropicairways.com violated the Anticybersquatting Consumer Protection Act ("ACPA").  On defendants' motion, the district court dismissed Tropic's amended complaint with prejudice for failure to state a claim because Tropic failed to plead facts showing that the mark "Tropic Ocean Airways" was distinctive and thus protected under the ACPA.  This appeal followed.

## II.

"We review *de novo* the district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting the complaint's allegations as true and construing them in the light most favorable to the plaintiff." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012) (internal quotation marks and citation omitted).  A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint is insufficient if it "tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotations marks and citation omitted).  To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.

The ACPA creates a civil cause of action for owners of certain marks against the creation of domain names that harm those marks.  15 U.S.C. § 1125(d).  For purposes of this case, to prevail on its ACPA claim, Tropic must prove that (1) its mark was distinctive at the time the defendants registered the domain name; (2) the defendants have registered or used a domain name that is identical or confusingly similar to Tropic's mark; and (3) the defendants registered or used the domain

3

name with a bad faith intent to profit.[1]  *See* 15 U.S.C. § 1125(d)(1).  The sole issue

in this appeal is whether Tropic has pled sufficient facts to allege that "Tropic

Ocean Airways" was a distinctive mark in March 2012 when the defendants

registered the domain name.

Distinctive marks are marks that "serve the purpose of identifying the source

of the goods or services."  *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357

(11th Cir. 2007).  This Court recognizes four gradations of distinctiveness, listed in

ascending order of strength:

> (1) generic—marks that suggest the basic nature of the product or service;
> (2) descriptive—marks that identify the characteristic or quality of a product
> or service; (3) suggestive—marks that suggest characteristics of the product
> or service and require an effort of the imagination by the consumer in order
> to be understood as descriptive; and (4) arbitrary or fanciful—marks that
> bear no relationship to the product or service, and the strongest category of
> trademarks.

*Tana v. Dantanna's*, 611 F.3d 767, 774 (11th Cir. 2010) (internal quotation marks

and citation omitted).   We have previously explained that the "demarcation

between each category is more blurred than it is definite."  *Coach House Rest., Inc.*

*v. Coach & Six Rests., Inc.*, 934 F.2d 1551, 1559 (11th Cir. 1991).

Suggestive and arbitrary or fanciful marks "are deemed inherently

distinctive and are entitled to protection."  *Two Pesos, Inc. v. Taco Cabana, Inc.*,

---

[1] The ACPA also provides a cause of action for cybersquatting in connection with famous
marks, *see* 15 U.S.C. § 1125(d)(1)(A)(ii)(II); however, Tropic does not allege that its mark is
famous.

4

505 U.S. 763, 768 (1992).  Descriptive marks are considered distinctive only if the mark has acquired "secondary meaning," which occurs "when the primary significance of the term in the minds of the consuming public is not the product but the producer." *Welding Servs.*, 509 F.3d at 1358 (internal quotation marks and citation omitted).  Tropic argues that its mark is distinctive because it is either (1) suggestive or (2) descriptive and has acquired secondary meaning.  Thus, we must determine whether Tropic's amended complaint alleges sufficiently that the mark is distinctive under either theory.

## A.

The allegations in the amended complaint are insufficient to allege that "Tropic Ocean Airways" is a suggestive mark.  As an initial matter, the amended complaint contains only minimal allegations about the mark.  The only allegation that could possibly support classifying the mark as suggestive is Tropic's allegation that it used the mark Tropic Ocean Airways "in connection with the offering and provision of its commercial aviation services which transport passengers . . . from the state of Florida to foreign countries such as the Bahamas and other destinations in the Caribbean."  Amended Compl. ¶ 8.  This allegation establishes only that the mark informs consumers about the service Tropic provides: flying planes across the ocean to tropical locations.  There is no leap of the imagination necessary to connect the mark to this service.  *See Welding Servs.*,

5

509 F.3d at 1357-58 (explaining a suggestive mark "requires a leap of the imagination to get from the mark to the product," such as using a penguin for a refrigerator product).

Tropic argues that the district court erred in concluding the mark was not suggestive by relying on this Court's unpublished decision in *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. App'x 252 (11th Cir. 2006), for the proposition that a mark is not suggestive when it is a combination of a geographic term and a common industry term.  In *Bavaro Palace*, this Court explained that the mark "Bavaro Palace" was descriptive, not suggestive, because "'Bavaro' refers to a specific section of beach in the Punta Cana area of the Dominican Republic and 'Palace' is a common industry term for a high-end hotel."  *Id.* at 255-56.  Tropic tries to distinguish *Bavaro Palace* by pointing out that the mark at issue in that case identified a specific location, while Tropic's mark refers generally to oceans within the tropics.  But, nothing in *Bavaro Palace* suggests that a geographic mark must refer to a specific place to be descriptive.  *See id.*  Regardless, as explained above, Tropic's mark does not qualify as suggestive because no leap of imagination is required to connect the mark to the service Tropic provides.

Tropic also contends that the mark is suggestive because, upon Tropic's application to register the mark, the Patent & Trademark Office ("PTO") accepted the mark as suggestive and published it for opposition.  Key West and Floyd have

6

filed an opposition with the PTO, and it does not appear that the PTO has taken any final action on the mark. Tropic makes no allegations in the amended complaint related to the PTO proceedings, but if it had, Tropic merely would have identified a non-final agency action. This Court has explained that when the PTO issues a certificate of registration, the certificate "establishes a rebuttable presumption that the marks are protectable or 'distinctive.'" *Welding Servs.*, 509 F.3d at 1357 n.3 (citation omitted). Here, however, no such presumption arises because the PTO has not issued a certificate of registration, and Tropic's application remains pending.[2]

Tropic further argues that whether a mark is distinctive is a question of fact; therefore, courts cannot decide at the motion to dismiss stage whether a mark is suggestive (and, therefore, distinctive) as a matter of law. Tropic relies on this Court's prior holding that "[d]istinctiveness is a question of fact." *See, e.g., St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1208 (11th Cir. 2009) (internal quotation marks and citation omitted). Tropic misunderstands the issue before the Court, namely, whether the amended complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible

---

[2] Even if the PTO had issued a certificate registering the mark, it is unclear whether the presumption would assist Tropic in this case. Tropic did not file an application for registration until March 2013—a year after Key West and Floyd registered the domain name. Other circuits have held that the presumption only dates back to the filing date of the registration application. *See George & Co. v. Imagination Entm't Ltd.*, 575 F.3d 383, 400 n. 15 (4th Cir. 2009) ("Registration grants a presumption of ownership, dating ownership to the filing date of the federal registration application . . . .").

on its face." *See Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).   Notably, Tropic alleges no facts related to the use of the mark that, if true, would establish that the mark is suggestive, such as whether competitors infrequently used the terms in the mark.  *See Investacorp, Inc. v. Arabian Inv.t Banking Corp.*, 931 F.2d 1519, 1523 (11th Cir. 1991) (explaining "third party usage by competitors is probative").

We conclude that Tropic's amended complaint fails to meet the standard for pleading that the mark is suggestive.

### B.

The allegations in the amended complaint are also insufficient to state a claim that the mark had secondary meaning in March 2012 when Key West and Floyd registered the domain name.  Instead of pleading factual allegations that would permit an inference that Tropic is entitled to relief, Tropic makes conclusory allegations about secondary meaning that are insufficient to survive a motion to dismiss.

Courts consider four factors to determine whether a mark has acquired secondary meaning:

> (1) The length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's product or business; and (4) the extent to which the public actually identifies the name with the plaintiff's product or venture.

8

*Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1513 (11th Cir. 1984).  This Court has explained that the fourth factor is the "most telling."  *Id.*

Virtually all the allegations in the amended complaint that relate to secondary meaning are conclusory.  Tropic alleges that (1) it "continuously promoted" the mark "through substantial advertising and marketing and sales of its aviation and airline services"; (2) it "expended considerable time, resources, and effort in promoting" the mark; and (3) the mark "serv[es] to distinguish Plaintiff's services in the marketplace."  Am. Compl. ¶¶ 10-11.  These allegations contain no factual content, "amount to nothing more than a formulaic recitation" of the final three elements of the secondary meaning test, and thus are insufficient to support a reasonable inference of secondary meaning.  *See Iqbal*, 556 U.S. at 680-81.

Stripping away Tropic's conclusory allegations, there remain only two properly pleaded facts in the amended complaint relating to secondary meaning.  These allegations are that Tropic (1) offered services using the mark beginning in March 2011, one year prior to Key West and Floyd registering the domain name and (2) used the mark on its own website, www.flytropic.com.  While using the name on the website may constitute advertising, Tropic failed to allege the nature and extent of advertising and promotion or its efforts to promote a conscious connection in the public's mind.  More importantly, Tropic alleges no facts about the extent to which the public identifies the mark with Tropic.  Tropic's bare

9

allegations are insufficient to establish that Tropic's mark has acquired secondary meaning. *See Iqbal*, 556 U.S. at 682.

## IV.

Tropic further argues that even if the pleadings in the amended complaint are insufficient, the district court should have dismissed its claims without prejudice. But Tropic never requested leave to amend and had already amended its complaint once. Under this Court's precedent, the district court did not err when it dismissed Tropic's claims with prejudice. *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (*en banc*) (holding the district court "is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court").

## V.

For the reasons set forth above, we affirm the district court's dismissal with prejudice of Tropic's amended complaint.

**AFFIRMED.**