UNITED STATES of America,
Plaintiff,

v.

Santiago MEDINA CUARTES, Oscar
Hernandez Riveros and Adriana
Cardona Arango, Defendants.

In re Juan Manuel Posse, Petitioner.

No. 99675CR.

United States District Court,
S.D. Florida.

April 11, 2001.

Michelle B. Alvarez, AUSA, Miami, FL,
for United States.

Michael Zelman, Coral Gables, FL, Juan
Manuel Posse.

***ORDER ADOPTING REPORT AND
RECOMMENDATION and DENY-
ING PETITION TO ADJUDICATE
THIRD PARTY INTEREST***

MIDDLEBROOKS, District Judge.

THIS MATTER is before the Court
upon the Petitioner JUAN MANUEL
POSSE's Objections to Report and Recom-

mendation (DE # 379). The Petitioner objects to Magistrate Judge Ted E. Bandstra's Report and Recommendation (DE # 372) wherein the Magistrate Judge recommends that the Court deny the Petitioner's Revised Verified Petition to Adjudicate Third Party Interest (DE # 144). The Court has carefully reviewed the Report and Recommendation, the Objections of the Petitioner as well as the other pertinent documents in the record of this case. After a full and diligent review, it is

**ORDERED AND ADJUDGED** that the Report and Recommendation of United States Magistrate Judge Ted E. Bandstra is hereby **ADOPTED in its entirety,** it being further

**ORDERED AND ADJUDGED** that the Petitioner JUAN MANUEL POSSE's Objections to the Report and Recommendation are hereby **OVERRULED,** it being further

**ORDERED AND ADJUDGED** that the Petitioner JUAN MANUEL POSSE's Revised Verified to Adjudicate Third Party Interest is hereby **DENIED.**

### REPORT AND RECOMMENDATION

BANDSTRA, United States Magistrate Judge.

THIS CAUSE is before the Court on the Revised Petition of Juan Manuel Posse to Adjudicate Third Party Interest (D.E. 144) filed on July 12, 2000. On that same date, this petition, together with several others, where referred to the undersigned for all appropriate judicial proceedings pursuant to 28 U.S.C. § 636(b). Accordingly, and following a period of discovery, the undersigned conducted an evidentiary hearing on this petition on February 23, 2001. Based on the evidence and applicable law, the undersigned recommends that this petition be DENIED for reasons stated below.

### PROCEDURAL HISTORY

On September 17, 1999, defendants Santiago Medina Cuartas, Oscar Hernandez Riveros, Adriana Cardona Lopez, and others, were indicted for violating Title 18, United States Code, Section 1956(h), and Title 18, United States Code, Section 1956(a)(1)(B)(i) by engaging in a conspiracy to commit money laundering offenses and money laundering offenses. Indictment, Counts 1 through 20. Pursuant to Rule 7(c), Federal Rules of Criminal Procedure, the Indictment contained criminal forfeiture allegations corresponding to the alleged money laundering offenses. Shortly after indictment, the government sought, and obtained, restraining orders to prevent the transfer, alienation or dissipation of certain assets subject to forfeiture, including Petitioner Juan Manuel Posse's bank account at NationsBank, Account No. 3625224578 (the "forfeited account"), wherein the sum of $75,360.00 was wired transferred on or about May 3, 1999.

In or about January and February 2000, defendants, Santiago Medina Cuartas, Oscar Hernandez Riveros, and Adriana Cardona Lopez, pled guilty (to Count I) and agreed to the forfeiture of all of their right, title and interest to all property involved in or traceable to violations of Title 18, United States Code, Section 1956.[1] On or about April 17, 2000, the

---

1. The government proffered at defendants' change of plea proceedings that the United States, through the Immigration and Naturalization Service and certain law enforcement agencies, had engaged in an undercover investigation into the movement of large amounts of United States currency derived from illegal narcotics trafficking through the

banking system in the United States. The government contended, and the defendants did not dispute, that this movement of currency included the $75,360.00 deposited into Petitioner Posse's account at Nations Bank (now Bank America) in Miami, Florida. Consequently, that account was also subject to the

Court entered an Order of Forfeiture forfeiting all of defendants' right, title and interest in all property involved in or traceable to violations of 18 U.S.C. § 1956, including but not limited to the funds deposited into Petitioner's account.

On July 10, 2000, Petitioner Juan Manuel Posse (hereinafter "Petitioner") filed his Verified Petition to Adjudicate Third Party Interest (D.E.137) with Appendix (D.E. 138), seeking to adjudicate his interest in the forfeited account and to terminate all restraint upon it. Essentially, Petitioner contends that he is the owner and sole signatory on the account and owner of the funds deposited therein. Petitioner further contends that he opened the account (then at Barnett Bank) in November 1995; and thereafter used the account, beginning in 1998, to invest in United States currency. Petitioner further contends, as explained more fully below, that he arranged for the purchase of $75,360.00 in United States currency, in exchange for Colombian pesos, through Ruben Sanchez, an officer at the Bank of Bogota, in Bogota, Colombia, who had arranged for numerous, similar currency transactions for Petitioner over the previous year. Petitioner disclaimed any knowledge of any narcotics source for the United States currency he purchased through deposits into his account; and insists that he had no reason to believe that the $75,360.00 at issue in this petition was purchased or derived from illegal narcotics activity.

Following a period of discovery and completion of briefing by the parties, the undersigned conducted an evidentiary hearing on this petition on February 23, 2001. In so doing, the undersigned heard testimony of Petitioner, Juan Manuel Posse, Special Agent Kurt Hartwell, a criminal investigator with the Internal Revenue Service, and Dr. Robert E. Grosse, a Professor of International Business at Thunderbird, The American Graduate School of International Management, in Glendale, Arizona.[2]

## FINDINGS OF FACT

Juan Manuel Posse is a Colombian businessman who lives in Chia, Colombia. Mr. Posse was educated in the United States where he studied business and business administration culminating in a Masters Degree from Colombia University in New York, New York in the early 1970's. Thereafter, petitioner returned to Colombia where he has permanently resided since the early 1970's and worked in a family business, as a stock broker in Bogota, Colombia, and in a seafood business he established in the 1980's.

Since at least 1995, Petitioner has invested personal assets in the Colombian Stock Exchange using his nephew, Diego Andrade, as his stockbroker in Colombia. Beginning in 1997, Petitioner began making purchases of United States dollars in the United States using a bank account he had previously opened (in 1995) at the Barnett Bank, in Miami, Florida. Petitioner purchased United States dollars to diversify his personal investments as did friends and acquaintances of Petitioner who also invested in United States currency.

Petitioner arranged for purchases of United States currency through Ruben Eduardo Sanchez, an officer at the Bank of Bogota, who had been introduced to Peti-

---

initial restraining order and to the final Order of Forfeiture entered on April 17, 2000.

**2.** Dr. Grosse was called as an expert in "black market" or "unreported" financial transac-

tions involving the purchase of narcotics derived currency by persons living outside of the United States.

tioner by his nephew, Diego Andrade. Petitioner purchased United States currency in the United States on several occasions commencing in 1998 using his Miami bank account (then at NationsBank) in transactions arranged by Ruben Sanchez. Typically, Petitioner advised Ruben Sanchez of the amounts of United States currency he wished to purchase for Colombian pesos. Ruben Sanchez would then arrange for sellers of United States currency to deposit the amount requested in Petitioner's bank account at NationsBank in Miami, Florida. Petitioner believed the sellers of this currency were exporters or businessmen in the United States who wished to exchange United States dollars for Colombian pesos. Petitioner never knew or concerned himself with the identify of the sellers, or their sources of United States currency because he trusted Ruben Sanchez based on his position with the Bank of Bogota and his introduction to Sanchez through Diego Andrade.

In 1998, Petitioner used Ruben Sanchez for ten (10) purchases of United States currency in $50,000 amounts. On each occasion, Petitioner contacted Ruben Sanchez and placed an order with him for the amount of dollars he wished to purchase. Sanchez would then arrange for the deposit of United States currency in the amount requested in Petitioner's Miami bank account after which Petitioner wrote checks, in Colombian pesos, to "sellers" identified by Sanchez as the providers of that currency. Petitioner made four similar purchases of United States dollars in 1999, each in the amount of $50,000, using the same procedures.

In April 1999, Petitioner asked Ruben Sanchez to arrange for the purchase of $75,000 in United States notes. Sanchez assured Petitioner that he could find sellers of that amount. On May 3, 1999, Petitioner confirmed that $75,360.00 had

been wired transferred into his NationsBank account. Due to a brief delay in this deposit, Petitioner decided that he only wanted to purchase $50,000 because of the Colombian exchange rate at that time. Ruben Sanchez told Petitioner to return $25,000 to him at an account at the same bank. Sanchez also provided Petitioner with the names of five persons to whom Petitioner was to send checks for Colombian pesos in exchange for the remaining $50,000. Petitioner did so by writing checks using his Colombian account as instructed by Sanchez.

Petitioner purchased United States dollars in this manner, rather than through a Colombian bank or other financial institution, for several reasons. First, Petitioner was able to purchase dollars at a better "price" or exchange rate because there was no bank charge. Second, Petitioner found that Sanchez could arrange for money exchanges more quickly ("usually one day") than a bank ("three to four days"). Third, Petitioner was able to avoid Colombian tariffs by using private sellers of currency in the United States. Petitioner did not believe that he violated any laws of Colombia or the United States by using this method to purchase United States currency because the United States dollars always remained in the United States.

Following his April purchase of $50,000, Petitioner withdrew $220,000 from his NationsBank account leaving a balance of just over $8,000 as of June 14, 1999.

Special Agent Kurt Hartwell, a criminal investigator with the Internal Revenue Service, participated in the undercover criminal investigation involving money laundering of narcotics-derived funds provided by defendant, Santiago Medina Cuartas, and other defendants in this criminal case. Special Agent Hartwell identified a document (Gov't Exh. 1) received from Cuartas, on or about April 30, 1999,

in which Cuartas instructed that $75,360.00 in United States currency received from Cuartas was to be deposited into Petitioner's NationsBank account. Cuartas specifically identified "Juan Manuel Pose" (sic) as beneficiary of that deposit. The undercover agents then wire transferred that amount into Petitioner's account as instructed by Cuartas, which was confirmed by the transferring bank on or about April 3, 1999. Petitioner denies any knowledge of Cuartas, as the provider of the currency he received on or about that date, and disclaimed any knowledge of the illegal narcotics source of this money.

Petitioner's account was first seized by Court Order on September 27, 1999. Petitioner knew of no problem with this account or any transaction using that account prior to the restraining order entered on that date. Petitioner had a balance of $3,757.46 in the NationsBank account at the time the restraining order was served upon the bank.[3]

### CONCLUSIONS OF LAW

Petitioner seeks the termination of the order of forfeiture with respect to the $75,360.00 deposited into the forfeited account pursuant to 21 U.S.C. § 853(n) which provides a mechanism for third parties to lay claim to criminally forfeited property. Specifically, 21 U.S.C. § 853(n) provides in relevant part as follows:

> (2) Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may ... petition the court for a

hearing to adjudicate the validity of his alleged interest in the property ...

> (6) If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—

> (A) the petitioner has a legal, right, title, or interest in the property, and such right, title, or interest ... is superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property ... or

> (B) the petitioner is a bona fide purchaser for value of the right, title or interest in the property and was at the time of purchase reasonably within cause to believe that the property was subject to forfeiture ...

> the court shall amend the order of forfeiture in accordance with its determination.

Pursuant to § 853(n), Petitioner seeks to defeat the government's claim to the forfeited account by establishing that he was a bona fide purchaser for value of the $75,360.00 in that account, and was at the time of the purchase of this currency without cause to believe that the property seized was subject to forfeiture. 21 U.S.C. § 853(n)(6)(B).

■ Petitioner carries the burden of proof and must establish his position by a preponderance of the evidence. *See United States v. Kennedy*, 201 F.3d 1324, 1328–29 (11th Cir.2000); *United States v. Dean*, 835 F.Supp. 1383, 1395 (M.D.Fla.1993). Actual lack of knowledge of forfeitability is

---

**3.** While the subject account had a balance of only $3,757.46 at the time of seizure under the initial restraining order, petitioner seeks to establish his claim to the entire amount $75,360.00 to prevent further government action against him with respect to the entire amount listed in the forfeiture order.

not enough. "The proper test to be applied under the statute is not merely whether the petitioner had knowledge of forfeitability of the asset but whether the petitioner *reasonably* held the belief that the property was not subject to forfeiture." (emphasis added). *Dean*, 835 F.Supp. at 1395 (quoting *United States v. Reckmeyer*, 836 F.2d 200, 204 (4th Cir.1987)). This is an objective, not subjective, test. "In other words, a genuinely held belief that property is not subject to forfeiture is unavailing unless the belief was objectively reasonable in the circumstances." *In Re Moffitt, Zwerling & Kemler, P.C.*, 846 F.Supp. 463, 472 (E.D.Va.1994). This standard precludes "wilful blindness" on the part of a petitioner and imposes a duty of reasonable inquiry, where warranted, before "objective reasonableness" can be established. *Id.* at 474–75 (claimant, to establish himself as a bona fide purchaser, "must ask sufficient direct questions and take whatever further steps [are necessary] ... to ensure that a belief that the funds are legitimate is objectively reasonable").

■ Here, Petitioner seeks to prove that he was a bona fide purchaser of the forfeited currency in the subject account by establishing that he is an owner and sole signatory on that account which he opened in 1975 and used repeatedly, without incident, for similar United States currency purchases in 1998 and 1999. Moreover, Petitioner relies on facts establishing that he invested in the purchase of the subject $75,360 after consulting with Ruben Sanchez, a Colombian banker introduced to him by his nephew, in Colombia. Petitioner further relies on the fact that Ruben Sanchez had successfully arranged for Petitioner's purchase of large amounts of United States currency on 14 prior occasions over the proceeding months using sellers arranged by Sanchez. Petitioner testified, and the evidence reveals, that Petitioner did not know and was unconcerned about the identities of the "sellers," or the sources of the currency he purchased, because he relied on Ruben Sanchez, a Colombian banker, who frequently arranged currency exchanges for Petitioner without incident.

Accepting Petitioner's testimony with respect to his lack of knowledge concerning the source(s) of the instant, forfeited currency, the undersigned finds that Petitioner was not a bona fide purchaser because he overlooked significant aspects of this currency purchase which, upon proper inquiry, would have alerted him to serious questions concerning the legitimacy of the transaction. Most significantly, Petitioner chose to ignore completely the identity of the "sellers" of this currency and their source of the currency in his desire to obtain quick purchases of currency at better exchange rates not available through established banks or other legitimate currency exchangers. Petitioner testified, and the evidence reveals, that he simply told Ruben Sanchez the amount of United States dollars he wished to purchase which then resulted in the almost immediate deposit of that amount into Petitioner's account, without any paperwork or exchange of financial documents, and most significantly, without any prior simultaneous exchange of currency by Petitioner. Ruben Sanchez then told Petitioner, after the deposit was made, the identities of the so-called "sellers" of the dollars deposited into that account so that Petitioner could write checks in Colombian pesos to cover the purchased amount. Petitioner, an educated businessman and former stockbroker in Colombia, had to know of the unusual nature of such financial transactions in-

volving, by his own recollection, at least $700,000 in and after 1998. The government's evidence clearly establishes the actual source of this particular currency, i.e., a deposit into the Petitioner's account of narcotics proceeds on instructions of defendant Santiago Medina Cuartas. While petitioner may have had no actual knowledge of Cuartas, his organization, or the actual source of the $75,360 deposited into his account in April 1999, his blind reliance on Ruben Sanchez, albeit a Colombian banker, was an unwise decision not objectively reasonable under the circumstances.

Reaching this decision, the undersigned makes no findings concerning Petitioner's actual or apparent knowledge of the narcotics connection to the forfeited funds from the testimony of Dr. Robert Grosse, the government's expert in "black market" currency exchanges such as that involved in this case. While Dr. Grosse is well qualified in this area, and testified clearly concerning the proliferation of off-shore purchases of United States currency derived from narcotics trafficking, the undersigned finds it unnecessary to impute that particular knowledge to Petitioner in this case to find that he lacked bona fide status as the purchaser of this currency. As already noted, Petitioner bears the burden of establishing his status as a bona fide purchaser which he fails to carry under an objective analysis. Also, the undersigned imputes no actual knowledge to Petitioner concerning the narcotics source of this currency. Rather, the undersigned finds that Petitioner's purchase of this currency in the manner described above bars a conclusion that he was a bona fide purchaser "reasonable without cause to believe that the property was subject to forfeiture" under the facts and circumstances of the subject purchase.

Accordingly, the undersigned recommends that the Revised Verified Petition of Juan Manuel Posse to Adjudicate Third Party Interest be DENIED.

The parties may serve and file written objections to this Report and Recommendation with the Honorable Donald M. Middlebrooks, United States District Judge, within ten (10) days of the receipt. *See* 28 U.S.C. § 636(b)(1)(C); *United States v. Warren,* 687 F.2d 347 (11th Cir.1982), *cert. denied,* 460 U.S. 1087, 103 S.Ct. 1781, 76 L.Ed.2d 351 (1983); *Hardin v. Wainwright,* 678 F.2d 589 (5th Cir. Unit B 1982); *see also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).