UNITED STATES of America

v.

Robert C. BROWN.

No. 3:06–CR–204J–33MCR.

United States District Court,
M.D. Florida.
Jacksonville Division.

Sept. 10, 2007.

Mark Devereaux, Susan H. Raab, Bonnie Ames Glober, U.S. Attorney's Office, Jacksonville, FL, for United States of America.

Robert C. Brown, Jacksonville, FL, pro se.

D. Gray Thomas, William J. Sheppard, Sheppard, White, Thomas & Kachergus, P.A., Jacksonville, FL, for Robert C. Brown.

## *ORDER*

VIRGINIA M. HERNANDEZ COVINGTON, District Judge.

This matter comes before the Court pursuant to Raquel Brown's Motion for Summary Final Judgment as to Forfeited Bank Funds (Doc. # 242) filed on August 14, 2007. The Government filed a response in opposition to the summary judgment motion (Doc. # 246) on August 28, 2007. Having reviewed the submissions of the parties, this Court denies the motion for the reasons that follow.

## I. *Legal Standard*

█ Although proceedings under 21 U.S.C. § 853(n) arise in the context of a criminal forfeiture, a § 853 ancillary proceeding is essentially a civil matter. *United States v. Gilbert,* 244 F.3d 888, 907 (11th Cir.2001). Pursuant to Federal Rule of Criminal Procedure 32.2, in a § 853 ancillary proceeding, a party may move for summary judgment under Federal Rule of Civil Procedure 56. *See* Federal Rule of Criminal Procedure 32.2(c)(1)(B); *United States v. Guerra,* 216 Fed.Appx. 906, 909 (11th Cir.2007)("Although proceedings under § 853(n) arise in the context of a criminal forfeiture, ancillary forfeiture proceedings are civil proceedings for the purpose of appellate review.").

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 (c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 742 (11th Cir.1996) (citing *Hairston v. Gainesville Sun Publ'g Co.,* 9 F.3d 913, 918 (11th Cir.1993)). A fact is material if it may affect the outcome of the suit under the governing law. *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be de-

cided at trial. *Hickson Corp. v. N. Cross-arm Co., Inc.,* 357 F.3d 1256, 1260 (11th Cir.2004) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.,* 64 F.3d 590, 593–94 (11th Cir.1995) (citing *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. *Shotz v. City of Plantation, Fla.,* 344 F.3d 1161, 1164 (11th Cir.2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. *Samples ex rel. Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988) (citing *Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau,* 835 F.2d 855, 856 (11th Cir.1988)). However, if non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. *Morris v. Ross,* 663 F.2d 1032, 1034 (11th Cir.1981), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2303, 73 L.Ed.2d 1306 (1982).

## II. *Background*

On June 29, 2006, the United States filed a twenty-five count indictment charging Robert C. Brown and Laurette C. Hunter with conspiracy, making fraudulent statements in connection with health care benefits, mail fraud, and defrauding a health care benefit program, all in violation

of 18 U.S.C. §§ 371, 1035, 1341, and 1347. (Doc. # 1). The indictment described a vast criminal enterprise, carried out through RCB, Inc. a walk-in medical clinic owned and operated by Robert Brown that maintained offices in Jacksonville, Florida.

According to the indictment, the defendants submitted false claims to various insurance companies and accepted reimbursements for hundreds of thousand of dollars for procedures that were not actually performed on patients. The indictment explains: "It was further part of the conspiracy that Hunter and PT, at the direction of Brown, would and did perform hundreds of diagnostic procedures on themselves utilizing medical equipment which generated printouts of test results, which were included as supporting documentation for fraudulently billed services." (Doc. # 1 at 6.)

In addition, the Indictment charges that "an agent of RCB would and did deposit the reimbursement checks into RCB's corporate bank account, for which Brown was the sole signatory." (Doc. # 1 at 4.) Further, the indictment charges that Brown transferred the funds to a personal account at Wachovia Bank. (Doc. # 1 at 7).

The indictment provided for the forfeiture of any and all right, title, and interest that the Defendants had in any property that constituted or was derived, directly or indirectly, from gross proceeds traceable to the offenses charged in the indictment under 18 U.S.C. § 982. (Doc. # 1 at 16–17.)

Among the items subject to forfeiture, the indictment specifically listed: "$91,158.86" (the "Funds") credited to Wachovia Bank Account 1010077092593 held in the name of Raquel Brown (the "Petitioner") who, at the time, was Robert Brown's wife. (Doc. # 1 at 17.)

On August 22, 2006, following a trial, the jury returned verdicts of guilty against Robert Brown and Laurette Hunter. (Doc.## 128–131.) Pursuant to the Special Verdict as to Robert Brown, the jury found that the Funds constituted or were derived from gross proceeds of a criminal conspiracy carried out by Robert Brown. (Doc. # 130.)

On November 8, 2006, this Court accordingly entered an a Preliminary Order of forfeiture, forfeiting to the United States all of Robert Brown's right, title, and interest in the Funds pursuant to 18 U.S.C. § 982(a)(7). (Doc. # 158.)

Petitioner claims an interest in the Funds and has filed multiple motions in her attempt to acquire the Funds. On January 8, 2007, Petitioner filed her Third Party Petitions to Recover Forfeited Property (Doc. ## 167, 168). Petitioner also filed her Motion for Summary Final Judgment as to Forfeited Bank Funds (Doc. # 242).

### III. *Petitioner's Arguments*

Petitioner asserts that she is a bona fide purchaser for value as to the Funds and was (at the time of the purchase) without knowledge or cause to believe that the Funds would be subject to forfeiture. In addition, she argues that, at the time of the commission of the acts giving rise to the forfeiture, she had a vested interest in the Funds superior to that of Robert Brown.

Petitioner asserts that she traces the Funds to a Charles Schwab Investment Co. Account as of 2002. Petitioner has filed several affidavits in which she avers that she held $53,000 in the Charles Schwab account and then loaned the money to Robert Brown in July of 2002 so that he could start up a business.[1] Petitioner

---

1. Petitioner explains that the $53,000 was deposited with Charles Schwab as an "IRA investment" and was "part of a previous corpo-

explained in her deposition that she did not loan the money to her husband all at once: "it was several loans. It was not all at once. It was several. I think that there were five of them, to my recollection." (Doc. # 242–2 at 19:1–9.) Petitioner did not require her husband to sign any loan documents or otherwise memorialize the transaction. (Doc. # 242–2 at 20:14.)

Through her deposition testimony, Petitioner admits that, at the time she "loaned" her husband the $53,000, she was aware that he had served time in prison (for exchanging sex with minors for drugs) and she believed that he was barred from the practice of medicine. (Doc. # 242–2 at 21:9–24). Petitioner stated: "it's my personal belief, you know, that he cannot be present, you know, he cannot be in the office within the business hours of the office" (Doc. # 242–2 at 22: 6–9.) [2]

Petitioner avers that "[e]ventually, after contentious insistence, Robert C. Brown repaid the loans that Petitioner had advanced." (Doc. # 242 at 2) Petitioner explains that Robert Brown repaid the loan with multiple checks on October 3, 2003 through Robert Brown's company: RCB, Inc. (Doc. # 242 at 2).

Petitioner states that she deposited the loan repayment checks into her Wachovia Bank account number 1010077092593 (the "Wachovia Account") on October 10, 2003.

In addition to the alleged loan repayment in the amount of $53,000, Petitioner claims that the remainder of the money in the Wachovia Account (approximately $38,000) was money that she earned by working at the clinic. In Petitioner's motion, affidavits, and deposition, she argues that "she was employed by Robert C. Brown but worked in the evenings and on the weekends and sometimes at the Emerson office where there were no business transactions. [She] made copies and went shopping for office furniture." (Doc. # 242 at 3).[3]

Petitioner describes her duties at the clinic as "light" (Doc. # 242 at 3). She asserts that she did not see patients at the clinic, did not interact with other clinic employees, and had no knowledge of the books or records of the clinic. (Doc. # 242 at 3.) She was allegedly oblivious to the operations of the clinic and assumed that the office medical director was in control of the clinic. (Doc. # 242 at 3.) [4]

Petitioner argues that because $53,000 of the Funds was loan repayment money and the remainder of the money was from the fruit of her labors, she should be entitled to the Funds.

---

rate pension plan that had been distributed to employees and Petitioner from a corporation that had closed." (Doc. # 242 at 2). During her deposition, Petitioner explained that the corporation that had closed was also a clinic owned by her husband and that it closed due to some "problemas" in the '90s when her husband went to prison. (Doc. # 242–2 at 17:2–25.)

2. During her deposition, Petitioner was asked: "Your husband went to prison at-in the late '80s, I believe?" Petitioner answered: "No, '90s." (Doc. # 242–2 at 17:22–23.) In addition, Petitioner acknowledged that her husband got out of prison in October of 2001. (Doc. # 242–2 at 18:11–12.)

3. It is not disputed that while petitioner was employed by her husband, she was paid $1,500 every other week as a salary until she received a raise and then received $2,000 every other week as a salary. (Doc. # 242 at 3.)

4. During her deposition, Petitioner indicated that she worked at the clinic during hours when the clinic was not open for business because her ability to speak English is limited (Doc. # 242–2 at 29:4) and because she has a panic disorder that limited her interaction with other people (Doc. # 242–2 at 34: 12–21.)

## IV. *Forfeiture Analysis*

In this case, the United States sought forfeiture of the Funds pursuant to 18 U.S.C. § 982. Judicial forfeiture proceedings under Section 982 are governed by 21 U.S.C. § 853. Section 853(n) applies to Petitioner's bona fide purchaser for value argument and superior title argument and provides as follows:

If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that -

(A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section,

the court shall amend the order of forfeiture in accordance with its determination.

21 U.S.C. § 853(n)(6).[5]

Thus, Section 853(n)(6) provides only two ways in which third party claimants such as Petitioner can establish an interest in forfeited property. Petitioner in this case has argued both (A) that she has a legal right, title, and interest in the Funds and that such right, title, and interest was vested in the Petitioner, rather then the Defendant, at the time of the actions giv-ing rise to the forfeiture and (B) that she is a bona fide purchaser for value of the Funds without knowledge.

### 1. *Superior Interest*

■ The Government correctly argues that Petitioner cannot have a legal interest in the proceeds of criminal conduct: "Since the United States seeks forfeiture of the Funds as proceeds, petitioner cannot assert a claim based on any preexisting superior interest in the Funds. Specifically because the interest of the United States in proceeds of crime arises at the time at which the crime is committed that generates the proceeds, logic and law dictate that, in a forfeiture case involving proceeds, a petitioner cannot assert a preexisting interest." This Court adopts the Government's argument as to Petitioner's claim to a preexisting interest in the Funds. It is axiomatic that Petitioner's Section (A) arguments fail. *See United States v. Hooper*, 229 F.3d 818, 823 (9th Cir.2000) (noting that civil and criminal forfeiture statutes were "consistent in denying relief to transferees of proceeds of crime causing forfeiture, unless those transferees [were] bona fide purchasers for value without notice.")

This principle has also been described by the Eleventh Circuit. In *United States v. Kennedy*, the court commented "the relation back provision contained in 21 U.S.C. § 853(c), vesting all right, title, and interest in the forfeited property in the United States upon the commission of the acts giving rise to the forfeiture, was specifically included in Section 853 as a way of avoiding such transfers." 201 F.3d 1324, 1335 (11th Cir.2000).

Title 21 U.S.C. § 853 states in pertinent part:

---

**5.** As stated in *United States v. Soreide,* 461 F.3d 1351, 1355 (11th Cir.2006) (21 U.S.C. § 853(n)(6)(B) exists only to protect subsequent purchasers of a defendant's interest in an asset and reaches only persons who give value to a defendant in an arms' length transaction with the expectation that they could receive value in return).

(a) Property subject to criminal forfeiture. Any person convicted of a violation of this title or title III punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law—
(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;
(2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and
(3) in the case of a person convicted of engaging in a continuing criminal enterprise in violation of section 408 of this title (21 U.S.C. 848), the person shall forfeit, in addition to any property described in paragraph (1) or (2), any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise.
The court, in imposing a sentence on such a person, shall order, in addition to any other sentence imposed pursuant to this title or title III, that the person forfeit to the United States all property described in this subsection. In lieu of a fine otherwise authorized by this part [21 USCS §§ 841 et seq], a defendant who derives profits or other proceeds from on offense may be fined not more than twice the gross profits of other proceeds.
(b) Meaning of term "property". Property subject to criminal forfeiture under this section includes—
(1) real property, including things growing on, affixed to, and found in land; and
(2) tangible and intangible personal property, including rights, privileges, interests, claims, and securities.
(c) Third party transfers. All right, title, and interest in property described in subsection (a) vests in the United States

upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (n) that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.

Accordingly, summary judgment in favor of Petitioner on the basis of her superior title, right, or interest arguments is not warranted.

## 2. Bona Fide Purchaser for Value Without Knowledge

 Petitioner also claims that she is a bona fide purchaser for value without knowledge. In *United States v. McCorkle,* the Eleventh Circuit outlined the bona fide purchaser for value exception as follows: "the forfeiture statute allows the Government to recover, in the course of ancillary third-party proceedings, all assets that are traceable to the forfeited assets." 321 F.3d 1292 (11th Cir.2003). However, a bona fide purchaser for value can avoid forfeiture under some circumstances: "The BFP standard requires that the transferees of forfeited property interests ... be bona fide purchasers for value of the right, title, or interest in the property. This means that the only assets that are potentially immunized from forfeiture are those for which value has been given." *Id.* at 1295 (internal citations omitted).

In *McCorkle,* a criminal defendant was convicted of money laundering and his cash was forfeited pursuant to a special verdict. The jury's special verdict specifically provided that two million dollars

McCorkle placed in trust for his criminal defense attorney was subject to forfeiture. *Id.* The defense attorney argued that the two million dollars was not subject to forfeiture because, *inter alia* he planned to provide legal services and was thus a bona fide purchaser for value. The court disagreed ruling that "the 'value' given by an attorney is the performance of legal services that have already been rendered when the attorney receives payment. This case does not present a close question, because the approximately $ 2 million paid to [the defense attorney] was paid for the rendition of *future* legal services." *Id.* at 1295 (emphasis in original.)

■ Among other things, the *McCorkle* case demonstrates the stringent requirements for "BFP" status and affirms that "value" is not an amorphous concept and instead is a matter of substance. Further, even if a petitioner establishes that she is a bona fide purchaser for value, only the reasonable value of the services actually provided is exempt from forfeiture. *Id.* at 1295 n. 4. In addition, a person who receives property subject to forfeiture as a "gift" cannot be a bona fide purchaser for value. *United States v. Kennedy,* 201 F.3d 1324, 1335 (11th Cir.2000).

Other courts have noted that a strawman or nominee acting on behalf of a criminal defendant or holding assets for a criminal defendant cannot satisfy the bona fide purchaser for value standard. In *United States v. Carrell,* the government initiated a forfeiture proceeding under 21 U.S.C. § 881(a)(6) claiming that funds and other assets were obtained with proceeds from drug transactions committed by the claimant's father. 252 F.3d 1193, 1204 (11th Cir.2001). The court explained: "People engaged in illegal activities often attempt to disguise their interests in property by placing title in someone else's name. In short, courts look behind the formal title to determine whether the rec-

ord title owner is a strawman set up to conceal the financial affairs of illegal dealings of someone else." In determining that forfeiture of the assets in question was appropriate, the court found that the son had knowledge of his father's illegal activities and was aware of a prior forfeiture of his father's assets.

Though the legal basis for forfeiture in the *Carrell* case is different from the basis for forfeiture in this case, the strawman/nominee analysis is nevertheless applicable. Here, Petitioner was married to her husband for approximately thirty years, and she was aware that a prior clinic owned by her husband had to be closed when her husband was incarcerated for serious criminal activity. Simply put, the Petitioner's actions giving rise to the instant forfeiture proceedings were not his first foray into the realm of crime.

■ Indeed, to prevail as a bona fide purchaser for value without knowledge, the petitioner must have an objectively reasonable belief that the property was not subject to forfeiture. *See United States v. Medina Cuartes,* 155 F.Supp.2d 1338, 1343 (S.D.Fla.2001) ("Actual lack of knowledge of forfeitability is not enough. The proper test to be applied under the statute is not merely whether the petitioner had knowledge of forfeitability of the asset but whether the petitioner reasonably held the belief that the property was not subject to forfeiture."(internal citations omitted)). As stated in *Cuartes,* the test is an objective, rather than subjective one. *Id.* This standard precludes "willful blindness" and imposes a "duty of reasonable inquiry" on the petitioner. *Id.* In addition, as stated in *United States v. One Parcel of Real Estate,* "deliberate avoidance of positive knowledge is the equivalent of knowledge." 721 F.Supp. 287, 290 (S.D.Fla.1989).

In the present case, the Petitioner is not entitled to summary judgment as a bona

fide purchaser for value because material issues of fact exist as to every component of the bona fide purchaser for value without knowledge exception.

There is a genuine question of material fact as to whether Petitioner was actually aware of her husband's illegal activities, or should have been aware under the circumstances. She knew that he was barred from practicing medicine, and yet she "loaned" him money to open up a medical clinic. She was aware of the fact that he owned a different clinic prior to going to prison, but that the clinic had to close. She allegedly worked in both clinics but claims to be oblivious to the fact that her husband used the clinic to perpetrate a continuing fraudulent scheme. There is a genuine question of fact as to whether her claimed obliviousness is objectively reasonable or whether she exhibited willful blindness, and a reasonable jury could find for the Government on all of these issues.

In addition, the alleged value that she contributed to the clinic, if any, is questionable. There are no records, such as time sheets, evidencing her hours worked. She testified that she did not work every day, and that she did not come to work during regular business hours. She took orders from her husband only, occasionally making copies, cleaning, and purchasing supplies. On this front, Petitioner has not shown that there are not genuine questions of material fact as to whether she provided actual value, in the amount claimed, through her employment.

Last, there is no documentation evidencing a loan by Petitioner to her husband, and along the same lines, there is no evidence to support that funds transferred by Robert Brown or his corporation constituted a loan repayment. It is undisputed that no loan documents exist. There is a genuine issue of material fact as to whether Petitioner acted as a nominee or strawman for Robert Brown during the course of their marriage, accepting proceeds of Robert Brown's criminal conduct. Accordingly, Petitioner is not entitled to summary judgment.

Accordingly, it is now

**ORDERED ADJUDGED** and **DECREED** that:

Raquel Brown's Motion for Summary Final Judgment as to Forfeited Bank Funds (Doc. # 242) is **DENIED**.