**UNITED STATES of America**

v.

**David A. SMITH.**

**Case No. 6:10–cr–232–35DAB.**

United States District Court,
M.D. Florida,
Orlando Division.

July 12, 2013.

---

Bruce S. Ambrose, Nicole M. Andrejko, U.S. Attorney's Office, Orlando, FL, I. Randall Gold, U.S. Attorney's Office, Tampa, FL, for United States of America.

## ORDER

MARY S. SCRIVEN, District Judge.

**THIS CAUSE** comes before the Court for consideration of the Motion for Summary Judgment (Dkt. 72) filed by the Government. The Government's motion has gone unopposed and the time for opposition has long since passed. Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS** the Government's Motion for Summary Judgment, as described herein.

## I. BACKGROUND

This ancillary matter arises from Petitioner Joseph Connolly's claim of interest in funds held in the name of TCI FX Traders in Forex Capital Markets Account Number 100005600. Joseph Connolly is the liquidator of TCI FX Traders LTD, a debtor in the Turks and Caicos Islands. TCI FX Traders LTD, a purported investment company, was used by criminal Defendant, David A. Smith ("Smith" or "Defendant"), to defraud investors out of millions of dollars. Defendant Smith consented to the forfeiture of the funds in this TCI FX Traders' Account.

### A. Procedural History

On August 18, 2010, Smith was charged in a twenty-three count indictment with wire fraud, conspiracy to commit money laundering, and money laundering. (Dkt. 1) As the result of the wire fraud violations and the money laundering violations, the Forfeiture Allegations of the Information sought the forfeiture of Smith's interest in any property constituting or derived from proceeds obtained directly or indirectly as a result of the wire fraud violations and any property, real or personal, involved in or any property traceable to such property as the result of the money laundering violations. (*Id.* at P. 13–15.)

On March 28, 2011, the United States and Defendant entered into a plea agreement. (Dkt. 25) As part of his plea agreement, Defendant agreed that he is liable for the forfeiture of "any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), and 28 U.S.C. § 2461(c), whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees." (*Id.* at P. 11) On March 29, 2011, Defendant pled guilty to Counts One through Twenty-three of the Indictment. (Dkt. 26) Thereafter, on August 4, 2011, the United States filed, pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), 18 U.S.C. § 982(a)(1), and Fed.R.Crim.P. 32.2(e)(1)(B), a Motion for Preliminary Order of Forfeiture seeking the forfeiture of, in relevant part, Defendant's interest in approximately $1,662,715.50 seized from Forex Capital Markets Account No. 1000056010 held in the name of TCI FX Traders LTD (TCI FX Traders' Account). (Dkt. 41) The

Court orally granted the motion for preliminary order of forfeiture at Defendant's sentencing on August 11, 2011, and entered the written order on August 19, 2011. (Dkt. 64)

Thereafter, Joseph Connolly ("Petitioner"), as liquidator for TCI FX Traders LTD (TCI FX Traders), filed a claim to contest the forfeiture of the funds held in the TCI FX Traders' Account. (Dkt. 66) The claim does not specify whether Petitioner is seeking relief pursuant to 21 U.S.C. § 853(n)(6)(A) or (B). *Id.* Petitioner filed an amended claim to comply with the requirement of 21 U.S.C. § 853(n)(3) that the claim be filed under penalty of perjury. (Dkt. 68)

The United States seeks summary judgment based on its assertion that the facts of this case are not in dispute and that Petitioner has failed to meet his burden of establishing by a preponderance of the evidence that Petitioner (1) has a superior title or (2) is a bona fide purchaser for value. (Dkt. 69) Petitioner has not filed a response to the United States' summary judgment motion either to argue the asserted position or to contest the facts that the United States asserts are undisputed. The facts presented by the United States are supported by evidence and remain uncontested.

## B. Undisputed Facts

Defendant executed a scheme to defraud thousands of investors located in the Middle District of Florida, Turks & Caicos Islands ("TCI"), and Jamaica out of over $220 million over a period of approximately three years. (Dkt. 25) In addition to defrauding those investors, Defendant conspired to launder the proceeds received and participated in the laundering of millions of dollars of proceeds obtained as a result of his fraud. (*Id.*) Specifically, beginning no later than February 2005, and continuing until July 15, 2008, Defendant executed a scheme to defraud thousands of investors in Olint, Olint Corporation, Olint TCI and TCI FX Traders, by operating a massive Ponzi scheme, in which Defendant paid returns to separate investors from their own money or money paid by subsequent investors, rather than from any profit actually earned. (Dkt. at P. 20)

Defendant solicited prospective clients to open trading accounts with Olint, Olint Corporation, Olint TCI, and TCI FX Traders, based upon, among other things, his promise to use investors' funds to engage in foreign currency trading (Forex) and representations that, by investing in Forex trading through him, clients could expect a high rate of return on their investment each month, with only twenty percent of their investment at any risk. (*Id.* at P. 21) To induce new and continued investments by clients and prospective clients, Defendant created client account statements each month showing purported profits in varying amounts of no less than five percent monthly, but on average, ten percent each month, and never with a loss during any monthly reporting period. (*Id.* at P. 21–22) Defendant also orally advised potential and current investors that he had never suffered a loss during a single trading period and that he had always experienced gains. (*Id.* at P. 22) In actuality, Defendant knew those representations were false. (*Id.* at p. 21)

Defendant failed to honor his promises to his clients by, among other things, failing to invest their funds in Forex trading as he had promised. (*Id.* at P. 22) Instead, Defendant used investors' funds to meet the periodic and specific redemption requests of other investors. (*Id.* at P. 22–23) For example, Defendant transferred funds deposited by Olint TCI and TCI FX Traders clients to individual Olint and Olint Corporation investors to meet specific re-

demption requests of Olint investors. (*Id.* at P. 23) In addition, Defendant transferred millions of dollars invested by his clients to his personal bank accounts and used those funds to finance a lavish and expensive life-style from which he and others received millions of dollars in goods, services, and other benefits. (*Id.*)

### a. *TCI FX Traders*

On or about August 15, 2006, Defendant created TCI FX Traders, with a registered office in Providenciales, TCI. (Dkt. 25 at P. 19) According to its prospectus, TCI FX Traders was "an open ended investment company ... established for the purpose of trading international currencies with the object of obtaining constant above average absolute return." (Dkt. 68 at ¶ 7) TCI FX Traders was licensed by the Financial Services Commission (FSC) of the TCI and conducted trades between January 2007 and July 2008. (*Id.*)

The Board of Directors for TCI FX Traders consisted of Defendant and another individual who was a resident of TCI (the "co-director"). (Dkts. 68 at ¶ 8); (Sworn Statement of the co-director, Dkt. 72–1 at P. 5) Defendant was responsible for establishing, maintaining and running the trading accounts and all aspects of dealing with the platform I–Trade FX, on which TCI FX Traders traded its clients' funds. (Sworn Statement of the co-director, Dkt. 72–1 at P. 6–8) The co-director did not have the time to dedicate to TCI FX Traders on a full-time basis, so he spent about two days a week monitoring the local operations of TCI FX Traders, reporting to administrators, and answering clients' questions. (*Id.* at P. 8)

### b. *Funding of the TCI FX Traders' Account Sought for Forfeiture*

Up until February 2008, Defendant carried out the trading of both TCI FX Traders and Olint through I–Trade FX, a trading platform located in Lake Mary, Florida. (Dkt. 68, Ex. 4 at ¶ 10) While funds from both companies were to have been kept separate, Defendant commingled Olint and TCI FX Trader's funds at I–Trade FX. (*Id.* at ¶ 13) Additionally, while trading at I–Trade FX, Defendant masked the poor trading of TCI FX Traders to recruit more investment funds for the company. (*Id.* at ¶ 17) Defendant further fraudulently supplied TCI FX Traders with falsified I–Trade FX statements describing TCI FX Trader's monthly trading activity. (*Id.*) Defendant used funds from Olint to lend credibility to the inaccurate and inflated figures in the monthly trading statements. (*Id.*) Defendant did the same with respect to the trading accounts and records of Olint. (*Id.*)

Due to Defendant's mishandling of TCI FX funds, I–Trade FX closed TCI FX Traders' account and returned approximately $10 million to Defendant via a TCI FX Traders' account he controlled in the TCI. (Dkt. 41 at fn. 3); (Dkt. 68, Ex. 4 at ¶¶ 18, 20); (Sworn Statement of the co-director, Dkt. 72–1 at P. 12) Thereafter, on or about March 4, 2008, Defendant directed the wire transfer of $9 million of those funds to Forex Capital Markets Account No. 1000056010 held in the name of TCI FX. (Dkt. 41 at fn. 3); (Dkt. 68, Ex. 4 at ¶ 27); (Sworn Statement of the co-director, Dkt. 72–1 at P. 12–13) Defendant did trade those funds, initially realizing a small profit. However, after the first trading period, his mismanagement of funds started to cause trading losses. (Sworn Statement of the co-director, Dkt. 72–1 at P. 13) Because Defendant had failed to put "stop losses"[1] in place, the account value had

---

1. A stop loss is an exit order that is used to limit the amount of loss that a trader will take on a trade, if the trade goes against them. The co-director and investors believed that

fallen by approximately sixteen percent. (*Id.*) Having lost all confidence in Defendant's trading ability, the co-director withdrew the money he had personally invested in the fund and advised other investors, including his friends and family, of his decision to do so. (*Id.*) As a result, approximately 80 percent of the investors withdrew their money while the other 20 percent remained invested in the hope that Defendant could make up their losses. (*Id.* at p. 14)

On July 9, 2008, an application for a restraint order was submitted by Detective Sergeant Willin Belliard with the Royal TCI Police Force, pursuant to section 43 of the Proceeds of Crime Ordinance 2007, TCI, to the TCI Supreme Court. *See* (Belliard's Application, Dkt. 72–2) As detailed in the application, Belliard sought to restrain the dissipation of assets of TCI FX Traders based upon an ongoing investigation into Defendant for money laundering and his involvement generally in operating a Ponzi scheme in connection with I–Trade FX. (*Id.*); (Dkt. 68, Ex. 2 at ¶ 5)

As a result of the application, on or about July 11, 2008, the TCI Supreme Court, issued an order restraining the assets of TCI FX Traders, as well as other property. *See* (Restraint Order, 72–3); (Dkt. 68, Ex. 2 at ¶ 5); (Dkt. 68, Ex. 4 at ¶ 29) At the time of the restraint, TCI FX Traders had approximately $2.6 million— $1,662,715.50 was held in TCI FX Traders' Account, approximately $900,000.00 was held at TCI Bank Ltd., and a $250,000.00

security deposit with the FSC (Sworn Statement of the co-director, Dkt. 72–1 at P. 16)

Concurrent with the restraint order, and because of concerns about the operations of TCI FX Traders, the FSC issued a notice requiring TCI FX Traders to cease trading activity. (Dkt. 68 at ¶ 9); (Dkt. 68, Ex. 2 at ¶ 8) These events coincided with the arrest of Defendant in the TCI based upon the above-referenced offenses.[2] (Dkt. 68 at ¶ 9)

On or about July 24, 2008, approximately $1,662,715.50 was seized from Forex Capital Markets Account No. 1000056010 held in the name of TCI FX Traders LTD pursuant to a civil seizure warrant issued by a United States Magistrate Judge in the Southern District of New York after a finding of probable cause that the funds were used or acquired as result of violations of 21 U.S.C. § 801 *et seq.* (Dkt. 41 at fn. 3); (Doc. 68 at ¶ 9) The United States has maintained possession of the funds since the date of seizure.

On February 2, 2009, the Attorney General for the TCI petitioned for the winding up of TCI FX Traders on the basis of public interest arising out of the arrest of Defendant in the TCI pursuant to sections 92(f)[3] and 94 of the Companies Ordinance 1981 (Cap 118), Laws of the Turks and Caicos Islands. (Dkt. 68, Ex. 2 at ¶ 1); (Dkt. 68, Ex. 4 at ¶ 30)

On April 3, 2009, the Supreme Court of the TCI issued an order placing TCI FX into liquidation. (Dkt. 68, Ex. 2 at ¶ 12)

---

part of Defendant's trading strategy was to have stop losses in place that would protect 80% of the value of the fund. (Sworn Statement of the co-director, Dkt. 72–1 at P. 13); (Dkt. 25 at P. 21)

**2.** On March 1, 2010, Defendant was formally charged with defrauding investors of TCI FX Traders from January 1, 2006 through July 31, 2008. See (Information, Dkt. 72–4)

**3.** Section 92(f) of the Companies Ordinance specifically provides that a company can be wound up if "the company, being a financial institution licensed under the Banking Ordinance or under any enactment repealing or replacing that Ordinance, has had its license to carry on banking business revoked."

Joseph Connolly was appointed as the official liquidator of TCI FX Traders. (Dkt. 68, Ex. 1 at ¶ 2); (Dkt. 68, Ex. 2 at ¶ 14)

## II. APPLICABLE LAW

### A. Forfeiture

 "Any person, other than the defendant, asserting a legal interest in the property which has been ordered forfeited to the United States," may petition the court for a hearing to adjudicate the validity of the alleged interest. 21 U.S.C. § 853(n)(6) (adopting same standard as § 1963(*l*)(6)). The ancillary proceeding creates an orderly procedure whereby third parties who claim their property interests have been forfeited in a criminal case can challenge the validity of the forfeiture order and establish their legitimate ownership interest. *See United States v. Marion,* 562 F.3d 1330, 1336 (11th Cir. 2009). The only issue in an ancillary proceeding is ownership of the property ordered forfeited in the criminal case. *United States v. Gilbert,* 244 F.3d 888, 911 (11th Cir.2001). To warrant an amendment to the forfeiture order, the third party petitioner must demonstrate a right, title, or interest in the property that is superior to that of the United States. *See id.*

Third parties can challenge the forfeiture of their claimed interest by demonstrating either that they have a legal interest superior to the defendant's or that they are bona fide purchasers for value. 21 U.S.C. § 853(n)(6); *Libretti v. United States,* 516 U.S. 29, 44, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995) (third parties limited in manner in which they can challenge forfeiture); *United States v. Kennedy,* 201 F.3d 1324, 1328 (11th Cir.2000) (third party asserting interest in criminally forfeited property limited to showing superior title or status as bona fide purchaser for value).

 Ancillary forfeiture proceedings that arise out of criminal cases are civil in nature and are thus governed by the Federal Rules of Civil Procedure. *See Gilbert,* 244 F.3d at 907. Accordingly, the parties may move for summary judgment under Federal Rule of Civil Procedure 56. *See* FED.R.CRIM.P. 32.2(c)(1)(B).

### B. Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Fennell v. Gilstrap,* 559 F.3d 1212, 1216 (11th Cir.2009) (citing *Welding Servs., Inc. v. Forman,* 509 F.3d 1351, 1356 (11th Cir.2007)). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991).

Evidence is reviewed in the light most favorable to the non-moving party. *Fennell,* 559 F.3d at 1216 (citing *Welding Servs., Inc.,* 509 F.3d at 1356). A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case. *Denney v. City of Albany,* 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

When a moving party has discharged its burden, the non-moving party must then designate specific facts (by its own affidavits, depositions, answers to interrogatories, or admissions on file) that demonstrate there is a genuine issue for trial. *Porter v. Ray,* 461 F.3d 1315, 1320–1321 (11th Cir.2006) (citation omitted). The

party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir.1985) ("conclusory allegations without specific supporting facts have no probative value."). Where the non-moving party fails to respond to the motion for summary judgment, the Court may "grant summary judgment, if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. 56(e)(3). Likewise, where the non-moving party fails to respond to the motion for summary judgment, the Court may "grant summary judgment, if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." FED. R. CIV. 56(e)(3).

## III. DISCUSSION

In this ancillary proceeding, the only issue before the Court is the ownership of the $1,662,715.50 seized from the TCI FX Traders' Account. Petitioner asserts that TCI FX Traders has a valid interest in the funds. (Dkt. 68 at P. 2) Petitioner, however, does not argue that TCI FX Traders' alleged interest in the funds vested before the Defendant's criminal activity or that TCI FX Traders is a bona fide purchaser for value of the funds without knowledge. (Dkt. 68) 21 U.S.C. § 853 provides only two ways in which third-party claimants such as Petitioner can establish an interest in forfeited property, and the United States argues that Petitioner has not established such an interest in the funds.

### A. Whether Petitioner Has a Superior Interest in the Funds Held in TCI FX Traders' Account

The United States first argues that Petitioner cannot show that TCI FX Traders had a pre-existing interest in the funds in the account or an interest superior to that of the United States in the funds held in TCI FX Traders' Account at the time the wire fraud offenses took place. According to the United States, its interest in the funds vested when the funds were wire transferred to TCI FX Traders' account at Defendant's direction and that Petitioner's interest in the funds vested at the same time. Consequently, the United States argues, that because its interest and Petitioner's interest in the subject funds arose at the same time, Petitioner cannot establish that it had a pre-existing interest in the subject funds. The United States also asserts that Petitioner does not have a pre-existing interest in the funds because a third party can never have a pre-existing interest in proceeds obtained from a crime.

In this respect, the United States' right to the property, which is subject to criminal forfeiture, vested at the time the Defendant committed the act that gives rise to the forfeiture. 21 U.S.C. § 853(c)("All right, title, and interest in property described in subsection (a) of this section vests in the United States upon the commission of the act giving rise to forfeiture under this section"). In order for a third-party's interest in the forfeitable property to be superior to the United States' interest, the claimant's interest must have vested *prior* to the crime giving rise to the forfeiture. *United States v. Eldick*, 223 Fed.Appx. 837, 840 (11th Cir. 2007); *United States v. Watkins*, 320 F.3d 1279, 1282 (11th Cir.2003). At the moment of the commission of the crime, all proceeds of that crime and any property acquired with those proceeds become the property of the United States. *Eldick*, 223 Fed.Appx. at 840.

It is undisputed that the criminal conduct that gives rise to this forfeiture was the asserted wire fraud. Specifically,

on March 4, 2008, Defendant directed a wire transfer of funds to TCI FX Traders' Account to further conceal and disguise the nature, location, source, ownership, and the control of the proceeds of his wire fraud scheme. (Dkt. 41 at P. 8 fn. 3) When Defendant transferred the money to the Account held in TCI FX Traders' name, TCI FX Trader' interest in the Funds vested. Although, TCI FX Traders and the United States' interests vested simultaneously, TCI FX Traders' interest is inferior to that of the United States because TCI FX Traders' interest did not vest *prior* to Defendant's wire fraud. Consequently, the United States' interest is superior to that of TCI FX Traders.

### B. Whether Petitioner is a Bona Fide Purchaser for Value without Reason to Believe the Funds in the TCI FX Traders' Account were Subject to Forfeiture

The United States next argues that Petitioner cannot establish that TCI FX Traders is a bona fide purchaser for value without reason to believe that the funds in the TCI FX Traders' Account were subject to forfeiture. This is so because 1) Defendant stole money from investors through TCI FX Traders and 'TCI FX Traders accepted investors' funds to perpetrate a scheme; and, 2) TCI FX Traders, through its principal Smith, knew the source of the property was the illegal scheme.

Section 853(n)(6)(B) applies to third party claimants who acquire their interests in property after the crime giving rise to the forfeiture. 21 U.S.C. § 853(n)(6)(B). To enjoy the benefit of this exception, a petitioner must prove: (1) a legal interest in the property; (2) that the interest was acquired as a bona fide purchaser for value; and (3) that the interest was acquired at a time when the claimant was reasonably without cause to believe that the

property was subject to forfeiture. *Id.; see United States v. Kennedy*, 201 F.3d 1324, 1328–29 (11th Cir.2000); *United States v. Brown*, 509 F.Supp.2d 1239, 1247 (M.D.Fla.2007). The legislative history of section 853(n)(6)(B) indicates that Congress intended to protect bona fide purchasers who give value in an arm's length transaction. *See United States v. Reckmeyer*, 836 F.2d 200, 207 (4th Cir.1987); *United States v. McCorkle*, 143 F.Supp.2d 1311, 1325 (M.D.Fla.2001) (the bona fide purchaser provision in section 853(n)(6)(B) is a codification of the protection for bona fide purchasers in section 2–403 of the Uniform Commercial Code).

■ In the instant matter, Petitioner, standing in the shoes of the debtor, TCI FX Traders, cannot demonstrate that TCI FX Traders purchased its interest in the investors' funds for value in an arm's length transaction. TCI FX Traders, a purported investment company, was one of the many instrumentalities Defendant used to defraud investors out of hundreds of millions of dollars. Through TCI FX Traders, Defendant solicited investors' funds, advertising that he would invest the funds in the foreign currency market; however, Defendant instead used those funds to pay back earlier investors to keep his scheme going and to enrich not only the corporation but himself with a lavish lifestyle. Because TCI FX Traders accepted investors' funds to perpetrate a scheme, it was not engaged in an arm's length transaction. Accordingly, TCI FX Traders was not a bona fide purchaser for value of the subject funds, and the Petitioner, standing in its shoes, is not a bona fide purchaser for value.

Thus, Petitioner is not entitled to the funds under section 853(n)(6)(B).

### IV. CONCLUSION

Accordingly, the Court concludes that Petitioner cannot establish that TCI FX

Traders either: (1) had a right, title or interest that vested before the time of the criminal acts which gave rise to the forfeiture or was otherwise superior to that of Defendant at the time of the crime; or (2) was a bona fide purchaser for value of the interest in the property a without cause to believe that the property was subject to forfeiture.

It is therefore **ORDERED** that:

1. Petitioner Joseph Connolly's Amended Motion for Miscellaneous relief, specifically seeking Restitution, (Dkt. 68) is **DENIED**

 a. Petitioner Joseph Connolly's initial Motion for Miscellaneous relief, specifically seeking Restitution, (Dkt. 66) is **DENIED.**

2. The United States' Motion for Summary Judgment (Dkt. 72) is **GRANTED;**

