[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-13174

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 17, 2007
THOMAS K. KAHN
CLERK

D.C. Docket No. 05-00096-CV-WCO-2

WELDING SERVICES, INC.,

                                        Plaintiff-Appellant,

    versus

TERRY FORMAN, WELDING
TECHNOLOGIES, INC., ROBERT
HENSON, CHARLES JONES,
ROD FORMAN,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(December 17, 2007)**

Before EDMONDSON, Chief Judge, TJOFLAT and GIBSON,* Circuit Judges.

---

    *Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by
designation.

GIBSON, Circuit Judge.

Welding Services, Inc. appeals from the district court's entry of summary judgment against it on its claim that Welding Technologies, Inc., its General Manager, Terry Forman, and its Vice President, Robert Henson, infringed Welding Services' service marks in violation of the Lanham Act, 15 U.S.C. § 1125(a). Welding Services contends that there are triable issues of fact as to whether the companies' service marks are confusingly similar, whether there has been actual confusion about which company was designated by Welding Technologies' marks, and whether Welding Technologies intended to infringe on Welding Services' marks. We affirm the judgment of the district court.

**I.**

Welding Services and Welding Technologies are rival companies providing services for maintaining equipment used in heavy industry. Since 1990 Welding Services has been using the abbreviation[1] "WSI," and since February 1994, it has



---

[1]We use the term "abbreviation" rather than "acronym" because an acronym is a kind of abbreviation that is pronounced as a word, rather than as letters. See 3 Louis Altman, Callmann on Unfair Competition, Trademarks and Monopolies § 18:12 n.27 (4th ed. 2004). Obviously, WSI

2

been using a stylized logo consisting of the initials WSI, surrounded by a circle, as shown in the margin.

Welding Technologies was founded in 2003. In May 2005, a group of former Welding Services employees bought Welding Technologies from the original owners. The individual defendants Terry Forman and Robert Henson are former employees of Welding Services who moved to Welding Technologies.[2] When Welding Technologies was created in 2003, the original owners had a sister company, Orbital Tool Technologies, Inc., a machining business. The owners hired an advertising company, Fetelli, Inc., to design twin logos for the two companies. The logos for both companies showed the company's initials with an orange "rotational symbol intended to convey the rotational movement of [Orbital Tool's] machining equipment." The Welding Technologies logo is shown in the margin.



Welding Services brought this suit alleging federal trademark infringement on its abbreviation and stylized logo under section 4 of the Lanham Act, 15

cannot be pronounced as a word.

[2]Rod Forman and Charles Jones were named as defendants in the complaint, but were not included in the Lanham Act count.

U.S.C. § 1125(a)(1)(A), as well as state law causes of action for unfair competition, false and deceptive trade practices, misappropriation of trade secrets, tortious interference with business relations, and other related theories. Welding Services and Welding Technologies made cross-motions for summary judgment on the Lanham Act claim, and Welding Technologies also moved for summary judgment on the state deceptive trade practices and unfair competition claims. The district court granted summary judgment to Welding Technologies on the only federal claim and on the state law claims for unfair competition and deceptive trade practices. The court declined to exercise supplemental jurisdiction over the remaining state law claims and so dismissed those claims.

On appeal, Welding Services' argument focuses on its federal Lanham Act claim. It argues that the district court erred in holding that Welding Services had not adduced a genuine question of material fact as to whether Welding Technologies' use of "WTI" and the logo above created a likelihood of confusion. Welding Technologies, on the other hand, argues that the district court should have held that Welding Services has not shown that the abbreviation "WSI" was entitled to trademark protection.

**II.**

We review de novo a district court's grant of summary judgment. Stewart v. Booker T. Washington Ins., 232 F.3d 844, 848 (11th Cir. 2000). Summary

4

judgment is proper only if the record before the district court shows that there is no genuine issue as to any material fact and Welding Technologies is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). We must view the evidence in the light most favorable to Welding Services, rather than weighing the evidence ourselves or making credibility determinations. Stewart, 232 F.3d at 848. Upon motion and after adequate discovery, a district court may enter judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). This court may affirm on any ground supported by the record. Bircoll v. Miami-Dade County, 480 F.3d 1072, 1088 n.21 (11th Cir. 2007).

To make a claim for infringement of its service marks, Welding Services must show: (1) that its service marks were entitled to protection and (2) that Welding Technologies' abbreviated name and logo were identical to those marks or so similar that they were likely to confuse consumers. 15 U.S.C. § 1125(a); Int'l Stamp Art, Inc. v. U.S. Postal Serv., 456 F.3d 1270, 1274 (11th Cir. 2006) (per curiam).

## III.

The district court considered the issue of whether Welding Services' marks were protected, but declined to enter summary judgment against Welding Services on that ground because the court was concerned that there was some evidence that the marks had acquired secondary meaning (although as to the abbreviation mark, the court's holding is ambiguous and may be read to mean that the abbreviation was not protected). On appeal, Welding Technologies argues that the abbreviation "WSI" is not protectable because it is generic.

At the outset, we observe that at the time of the district court's decision, Welding Services had not successfully registered either the abbreviation WSI or the stylized logo. Its application to register "Welding Services Inc." had been refused by the Patent and Trademark Office's examining attorney on the ground that the proposed mark was merely descriptive or generic as applied to the welding services identified. Its application to register "WSI" was refused on the ground that the mark was confusingly similar to a prior registered WSI mark used to sell highly related services. In its reply brief before this court, Welding Services first advised us that after the date of the district court's decision, the abbreviation and logo had been accepted by the Patent and Trademark Office for registration. Further, at oral argument, Welding Services' counsel advised us that it had successfully registered the abbreviation "WSI" and the stylized logo. We

6

ordinarily do not review materials outside the record on appeal as designated by Fed. R. App. P. 10(a), although we have the equitable power to do so if it is in the interest of justice. See Schwartz v. Millon Air, Inc., 341 F.3d 1220, 1225 n.4 (11th Cir. 2003). However, Welding Services has neglected to address before this court the ramifications that registration would have on allocation of the burden of proof on the issues of protectability and strength of the marks.[3] Nor has Welding Services moved to reopen the district court proceedings to enlarge the record. In light of these omissions and of the fact that Welding Services as plaintiff filed this case and also filed a summary judgment motion before the registration was complete, we conclude that justice does not require us to deviate from the ordinary rule that the appeal is decided on the record before us. See Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373, 381-83 (2d Cir. 2005) (where mark not registered until after district court entered judgment and district court declined to reopen the trial record to include new evidence of registration, court considered protectability without reference to registration), cert. denied, 126 S. Ct. 1570 (2006).

---

[3]Registration establishes a rebuttable presumption that the marks are protectable or "distinctive." 15 U.S.C. § 1057(b). The sort of presumption appropriate depends on whether or not the Patent and Trademark Office has required proof of secondary meaning. See Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 117 & n.2 (1st Cir. 2006) (If no proof of secondary meaning is provided, presumption is that mark is inherently distinctive; if proof of secondary meaning is provided, presumption is that mark has secondary meaning.).

Trademark or service mark protection is only available to "distinctive" marks, Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768-69 (1992), that is, marks that serve the purpose of identifying the source of the goods or services, see Colt Defense LLC v. Bushmaster Firearms, Inc., 486 F.3d 701, 705 (1st Cir. 2007). Some marks are inherently distinctive; some marks, though not inherently distinctive, acquire distinctiveness by becoming associated in the minds of the public with the products or services offered by the proprietor of the mark; and some marks can never become distinctive. Two Pesos, 505 U.S. at 768-69; Coach House Rest., Inc. v. Coach & Six Rests., Inc., 934 F.2d 1551, 1560 (11th Cir. 1991). Distinctiveness is a question of fact, whether the question is inherent distinctiveness or acquired distinctiveness. Investacorp, Inc. v. Arabian Inv. Banking Corp., 931 F.2d 1519, 1523 (11th Cir. 1991); Coach House, 934 F.2d at 1560.

Trademark law distinguishes four gradations of distinctiveness of marks, in descending order of strength: fanciful or arbitrary, suggestive, descriptive, and generic. An arbitrary or fanciful mark bears no logical relationship to the product or service it is used to represent. Soweco, Inc. v. Shell Oil Co., 617 F.2d 1178, 1184 (5th Cir. 1980) (giving example of "Kodak"). A suggestive mark refers to some characteristic of the goods, but requires a leap of the imagination to get from the mark to the product. Id. (giving example of "Penguin" for refrigerators). A

8

descriptive mark identifies a characteristic or quality of the service or product.  Id. at 1183-84 (giving example of "Vision Center" for eyeglasses store).

There are several different approaches to defining "generic."  By one test, a generic name refers to "a particular genus or class of which an individual article or service is but a member."  Soweco, 617 F.2d at 1183 (internal quotation marks omitted).  By another measure, a generic name is the term by which the product or service itself is commonly known.  See Nat'l Conference of Bar Exam'rs v. Multistate Legal Studies, 692 F.2d 478, 487 (7th Cir. 1982).  Still other courts say a generic name depicts the product or service as a whole, rather than any particular feature, quality, or characteristic of the whole.  Blinded Veterans Ass'n v. Blinded Am. Veterans Found., 872 F.2d 1035, 1039 (D.C. Cir. 1989) (citing Zatarains, Inc. v. Oak Grove Smokehouse, Inc., 698 F.2d 786, 790 (5th Cir. 1983)).  Genericness lies not in the term itself, but in the use of the term: "A word may be generic of some things and not of others: 'ivory' is generic of elephant tusks but arbitrary as applied to soap."  Soweco, 617 F.2d at 1183.

A generic use of a word may not be registered as a trademark.  Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194 (1985).  A descriptive name, on the other hand, though not inherently distinctive, can acquire distinctiveness or "secondary meaning" by becoming associated with the proprietor's product or service.  Am. Television & Communications Corp. v. Am. Communications &

9

Television, Inc., 810 F.2d 1546, 1548-49 (11th Cir. 1987). A name has acquired

secondary meaning when "the primary significance of the term in the minds of the

[consuming] public is not the product but the producer." Id. at 1549 (quoting

Vision Ctr. v. Opticks, Inc., 596 F.2d 111, 118 (5th Cir. 1979) (quoting Kellogg

Co. v. Nat'l Biscuit Co., 305 U.S. 111, 118 (1938))). A proprietor can make a

prima facie showing of "secondary meaning" by showing that the name has been

used in connection with the proprietor's goods or service continuously and

substantially exclusively for five years. 15 U.S.C. § 1052(f). Whether a name has

attained secondary meaning depends on the length and nature of the name's use,

the nature and extent of advertising and promotion of the name, the efforts of the

proprietor to promote a conscious connection between the name and the business,

and the degree of actual recognition by the public that the name designates the

proprietor's product or service. Conagra, Inc. v. Singleton, 743 F.2d 1508, 1513

(11th Cir. 1984).

Courts have generally held that a term used generically cannot be

appropriated from the public domain; therefore, even if the name becomes in some

degree associated with the source, a generic mark cannot achieve true secondary

meaning. See Soweco, 617 F.2d at 1185 n.20 (secondary meaning not relevant to

generic mark); Vision Ctr. v. Opticks, Inc., 596 F.2d 111, 115 & n. 11 (5th Cir.

1979) ("Most courts hold that a generic term is incapable of achieving trade name

10

protection"; courts refuse to allow proof of secondary meaning to elevate generic term to trademark status); see also Schwan's IP, LLC v. Kraft Pizza Co., 460 F.3d 971, 974 (8th Cir. 2006); Zatarains, Inc. v. Oak Grove Smokehouse, Inc., 698 F.2d 786, 790-91 (5th Cir. 1983); Nat'l Conference of Bar Exam'rs, 692 F.2d at 487; 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 15:24 (4th ed. 2007). But see Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co., 494 F.2d 3, 11 (5th Cir. 1974) (generic name will be protected if it acquires secondary meaning).

The record indicates that when Welding Services applied to register the name "Welding Services Inc.," registration was refused on the ground that the proposed mark was "generic as applied" and that it was descriptive. As the Patent and Trademark Office concluded upon reviewing the application, "Clearly the applicant is providing welding services and [the] proposed mark is generic for the applicant's services." In the service mark registration application for "WSI" in the record before us, Welding Services itself describes the kind of services it offers as "[w]eld metal overlay services and fabrications." Similarly, in a page from the Welding Services website attached as an exhibit to the registration application, Welding Services states: "Welding Services is the largest producer and supplier of weld metal overlay services and fabrications in the world." This statement assumes that the company is one of many suppliers of "weld . . . services." Even

11

in its statement of material facts in the district court, Welding Services used the phrase to denote the services that both it and Welding Technologies provide: "The parties' Marks are used in connection with identical services – non-nuclear <u>welding services</u> that compete directly with the other"; "Defendant Welding Technologies, Inc. ('WTI') is an Illinois corporation that provides <u>welding services</u> in direct competition with WSI" (emphasis added). A would-be proprietor's use of the words in the mark to refer to the kind of services it and its competitors provide is powerful evidence that the words in the putative mark are being used generically. See <u>Retail Servs. Inc. v. Freebies Publ'g</u>, 364 F.3d 535, 545 (4th Cir. 2004); 2 <u>McCarthy</u>, <u>supra</u>, at § 12.13. Here, Welding Services has used "welding services" to denote both what it does and what Welding Technologies does for customers; we can only conclude that its use of these words is generic.[4]

Although we conclude that the words "welding services" are not protectable, this does not decide the precise question before us because Welding Services, Inc. does not seek protection for the words themselves, but for the abbreviation "WSI" and the stylized logo using that abbreviation. The

---

[4]The mere inclusion of "Inc." at the end of the name does not make generic words protectable. <u>In re Patent & Trademark Servs. Inc.</u>, 49 U.S.P.Q.2d 1537, 1539 (Trademark Trial & App. Bd. 1998); 3 Louis Altman, <u>Callmann on Unfair Competition</u> § 18:4, at 18-67 (4th ed. 2003).

protectability of the initials and of the stylized logo present different issues, so we will consider them in turn.

Abbreviations of generic words may become protectable if the party claiming protection for such an abbreviation shows that the abbreviation has a meaning distinct from the underlying words in the mind of the public. G. Heileman Brewing Co. v. Anheuser-Busch, Inc., 873 F.2d 985, 993-94 (7th Cir. 1989) ("heavy burden" on trademark claimant seeking to show an independent meaning for initials of descriptive words apart from the fact that they are abbreviations for the descriptive words); 2 McCarthy, supra, § 12:37 (distinguishing between abbreviations "which still convey[] to the buyer the original generic connotation of the abbreviated name" and those which are "not recognizable as the original generic term"). But cf. Anheuser-Busch, Inc. v. Stroh Brewery Co., 750 F.2d 631, 635-36 (8th Cir. 1984) (abbreviation of generic words protectable if "some operation of the imagination is required to connect the initials with the product"); Modern Optics, Inc. v. Univis Lens Co., 234 F.2d 504, 506 (C.C.P.A. 1956) ("[I]nitials cannot be considered descriptive unless they have become so generally understood as representing descriptive words as to be accepted as substantially synonymous therewith.").

Welding Services introduced the affidavit of its marketing director, Michael Welch, stating that the company had used the abbreviation since 1990 and the

13

stylized logo for nine years before Welding Technologies began using its marks. Welch said Welding Services had spent $5 million advertising its marks over the course of fourteen years (from 1990 to 2004) and had generated more than $1 billion in revenues. Welch said that the WSI marks are recognized as a "highly significant indicator of WSI's welding services." On the basis of this evidence, the district court declined to hold that Welding Services' marks were not protectable.

But Welch's affidavit does not address the question of whether the company's investment in advertising its marks served to give the abbreviation "WSI" a meaning distinct from the words "Welding Services Inc." While investment in advertising is relevant to the question of secondary meaning generally, Investacorp, Inc. v. Arabian Inv. Banking Corp., 931 F.2d 1519, 1525 (11th Cir. 1991), the question of whether the abbreviation has a discrete meaning in the minds of the public from the generic words for which it stands requires a different kind of evidence. The only evidence in the record relevant to this question shows Welding Services has not created a separate meaning for the abbreviation. Crucially, exhibit B to Welding Services' statement of material facts shows the logo with the initials on advertising material displayed immediately next to the words "Welding Services Inc." Thus, Welding Services' own motion papers indicate that the abbreviation is used in association with the generic words, rather than being used in a way that would give rise to a meaning distinct from

14

those words. Accordingly, we hold that Welding Services had not shown "WSI" to be protectable.

As for the stylized logo, a logo consisting of a nonprotectable literal element combined with a display or geometric design may be distinctive enough to receive protection. In re Trail-R-Van, Inc., 188 U.S.P.Q. 590, 591 (Trademark Trial & App. Bd. 1975); 3 Callman, supra, § 18:4, at 18-62–18-63; 2 McCarthy, supra, § 12:40. The WSI stylized logo is not particularly distinctive, consisting of the three letters in a circle. See Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373, 383 (2d Cir. 2005) (basic shapes not protectable, though stylized version of shapes and letters may be). Nevertheless, we will not hold that summary judgment against Welding Services would have been proper on this question, since another ground-- no likelihood of confusion--so obviously supports entry of summary judgment against Welding Services on the claim for infringement of the stylized logo.

## IV.

Likelihood of confusion is assessed by examining seven factors: (1) distinctiveness of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods or services offered under the two marks; (4) similarity of the actual sales methods used by the two parties, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the

15

proprietor's good will; and (7) existence and extent of actual confusion in the consuming public. Conagra, Inc. v. Singleton, 743 F.2d 1508, 1514 (11th Cir. 1984); see also Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.,—F.3d—, 2007 WL 4165634, at *3 (11th Cir. Nov. 21, 2007). The likelihood of confusion is a question of fact. Jellibeans, Inc. v. Skating Clubs, 716 F.2d 833, 840 n.16 (11th Cir. 1983). In this circuit, we are required to consider each of the seven factors. Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC, 369 F.3d 1197, 1207 (11th Cir. 2004).

The stronger or more distinctive a trademark or service mark, the greater the likelihood of confusion and the greater the scope of protection afforded it, and conversely, the weaker the mark, the less protection it receives. See Amstar Corp. v. Domino's Pizza, Inc., 615 F.2d 252, 259 (5th Cir. 1980). While we decline to decide whether the logo was sufficiently distinctive to be protectable, we can say that at most the extent of stylization was marginal. The result is a weak mark, entitled to very little protection (if any). Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373, 383 (2d Cir. 2005).

Visual comparison of the two logos shows that they are not similar. The WSI mark consists of stylized letters in an ordinary circle. The WTI mark consists of plain block letters with an orange "swoosh" design, meant to convey rotational movement, wrapping around the middle of the letters. The words "Welding

16

Technologies, Inc" appear below the letters. There is not the least possibility of confusing the two stylized logos. Overwhelming visual dissimilarity can defeat an infringement claim, even where the other six factors all weigh in favor of the plaintiff. Dippin' Dots, 369 F.3d at 1208.

The next three factors weigh in favor of Welding Services, since there is undisputed similarity of services offered, sales methods, and advertising methods.

The record does not support Welding Services' contention that Welding Technologies intended to cause confusion in adopting its mark. The story of how the WTI logo was created by previous owners to harmonize with the mark of its sister company is undisputed and shows an innocent origin for the logo.

Finally, Welding Services contends that it has shown actual confusion between the marks. Welding Services offered the deposition of Michael Welch, who said that at a trade show in 2005, he had a number of customers come and ask about "who WTI was and whether they were affiliated with WSI." Terry Forman, of Welding Technologies, reported that she had been asked whether Welding Technologies was a "spin-off of WSI." These incidents have no explicit connection to the stylized logos. As the district court remarked, their probative value is very low because of the uncertainty about what might have prompted the inquiries. Welding Technologies' employees were formerly associated with Welding Services, so the confusion could just as likely have arisen because of the

17

personnel rather than the logo. Moreover, the nature of the business at issue here requires that the purchasers of the services must be sophisticated consumers, since the services are technical and large-scale. Such purchasers are less likely to be confused than casual purchasers of small items. See Freedom Sav. & Loan Ass'n v. Way, 757 F.2d 1176, 1185 (11th Cir. 1985).

Welding Services has not come forward with sufficient proof of likelihood of confusion of the logos to warrant a trial of the issue.

***

We **AFFIRM** the judgment of the district court.