[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10784
_____

D.C. Docket No. 1:16-cv-20683-FAM

HERON DEVELOPMENT CORPORATION,
a foreign corporation,
PALACE RESORTS, S.A. DE C.V.,

                                                            Plaintiffs - Appellees,

versus

VACATION TOURS, INC.,
a Florida corporation
d.b.a. Vacation Store of Miami, Inc.,
MEDIA INSIGHT GROUP, INC.,
a Florida corporation
d.b.a. Media Insight,
GEORGE A. ALVAREZ,
jointly, severally, and individually,
ROSANNA M. MENDEZ,

                                                            Defendants - Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 13, 2020)

Before JORDAN and JILL PRYOR, Circuit Judges, and COOGLER,* District
Judge.

PER CURIAM:

Vacation Tours, Inc., Media Insight Group, Inc., Rosanna Mendez, and

George Alvarez (together, "the defendants") appeal the district court's order

granting summary judgment to Palace Resorts, S.A. de C.V on its claim that the

defendants' registration and use of 40 domain names violated the Anti-

Cybersquatting Consumer Protection Act ("ACPA"). *See* 15 U.S.C. § 1125(d).

After granting summary judgment to Palace Resorts on that claim, the district court

ordered the defendants to transfer all 40 infringing domain names to Palace

Resorts, awarded Palace Resorts statutory damages, and determined that Palace

Resorts was entitled to attorney's fees.

On appeal, the defendants argue that the district court erred by adopting the

magistrate judge's factual findings, made in the context of deciding a motion for a

preliminary injunction, because the magistrate judge weighed the evidence—

---

* Honorable L. Scott Coogler, United States District Judge for the Northern District of
Alabama, sitting by designation.

2

something the district court may not do at the summary judgment stage. After careful consideration, and with the benefit of oral argument, we agree with the defendants that the district court erred. We vacate the district court's grant of summary judgment to Palace Resorts on the ACPA claim, vacate the final judgment, and remand the case to the district court for further consideration.[1]

## I.    BACKGROUND

### A.    Factual Background

Palace Resorts owns and operates hotels and resorts in Mexico and the Caribbean. It and a related entity, Palace Holding, S.A. de C.V., registered various trademarks related to the names of the hotels and resorts that Palace Resorts operates.

For about a decade, Vacation Tours had a contractual wholesaler relationship with Palace Holding in which Vacation Tours operated as a reservation referral service for the hotels and resorts.[2] Under the wholesaler agreement, Vacation Tours had permission to use pre-approved photographs and images of Palace Resorts hotels and resorts for marketing purposes. To facilitate

---

[1] The defendants also argue that the district court erred in determining that the case was "exceptional" and thus warranted an award of attorneys' fees under 15 U.S.C. § 1117(a) and in depriving the defendants of the right to a jury trial on statutory damages. Because we agree with the defendants that the district court erred in granting summary judgment, however, we need not address the defendants' other arguments.

[2] Because we write for the parties, we assume their familiarity with the facts and include only what is necessary to understand our resolution of this appeal.

advertising under the agreement, Vacation Tours, through Media Insight, registered 40 domain names that include the exact name, or a slight variation, of a Palace Resorts property and its corresponding trademark.  Vacation Tours operated websites using these registered domain names to sell reservations to stay at Palace Resorts properties.

Palace Holding learned of Vacation Tours's use of the infringing domain names when customers complained that they thought they had booked reservations through Palace Resorts, but in fact they had booked through Vacation Tours. Palace Holding's counsel sent letters terminating the wholesaler agreement and demanding that Vacation Tours cease and desist using the trademarks.  Vacation Tours replied by sending a proposed contract seeking payment from Palace Holding for a transfer of or license to use the domain names.  In response, Palace Holding sent another cease and desist letter.  Vacation Tours continued to operate the websites and use pictures of the hotels and resorts well after the wholesaler agreement was terminated.

After terminating the wholesaler agreement, Palace Holding entered into a licensing agreement with Heron Development Corporation, giving Heron an

exclusive license to use the trademarks for the sale, marketing, and promotion of Palace Resorts properties to potential customers in the United States.[3]

## B.    Procedural History

Heron brought a seven-count action in federal district court against the defendants arising out of the registration and use of the 40 domain names.[4]  Count I of the complaint alleged that the defendants engaged in cybersquatting in violation of the ACPA.  *See* 15 U.S.C. § 1125(d).

Shortly after filing the lawsuit, Heron moved for a preliminary injunction on all counts to prohibit the defendants from using Palace's trademarks on its websites and operating websites under the infringing domain names.  The defendants opposed the motion, arguing, among other things, that no violation had occurred because Palace had consented to the defendants' operation of the websites.  The defendants pointed to a series of email exchanges with Palace that, they argued, showed its consent to their continued use of the websites.

After an evidentiary hearing, the magistrate judge issued a report and recommendation ("R&R") determining that the defendants had violated the ACPA

---

[3] Palace Holding later transferred all of its rights, interests, and obligations in and to the trademarks, as well as the licensing agreement, to Palace Resorts.  For the remainder of the opinion we will refer to either entity or both entities collectively as "Palace," unless the distinction between the two matters.

[4] Palace Resorts was not an original party to the case but was added in an amended complaint.

when they "repeatedly and unjustifiably refused to cease using the domain names after the [wholesaler agreement] was terminated." Doc. 94 at 16.[5] The magistrate judge found that the email exchanges on which the defendants relied to show that Palace had acquiesced in their continued use of the domain names did "not constitute active consent" to use the trademarks. *Id.* at 18. In addition, the magistrate judge found that the defendants' use of the disputed domain names was confusing and likely to mislead the public. Based on these findings of fact, the magistrate judge recommended that the district court enjoin the defendants from registering domain names that incorporate Palace's trademarks and order the defendants to forward website traffic from their infringing domain names to the appropriate Palace Resorts website. After considering the defendants' objections, the district court adopted the magistrate judge's R&R and entered a preliminary injunction.[6]

Palace then moved for partial summary judgment solely on Count I.[7] The district court granted the motion, concluding that the defendants had violated the

---

[5] "Doc. #" refers to the district court's numbered docket entry.

[6] The defendants immediately appealed the district court's order awarding a preliminary injunction, but a separate panel of this Court dismissed the appeal as moot after the district court entered a final judgment. *See Heron Dev. Corp. v. Vacation Tours Inc.*, 763 F. App'x 875, 877 (11th Cir. 2019) (per curiam).

[7] The defendants filed a motion to dismiss Count I in part, arguing that Heron lacked standing to bring a claim under the ACPA. The district court granted the motion to dismiss Heron as a plaintiff on that claim, leaving Palace as the sole plaintiff.

ACPA.  The district court observed that the defendants had raised affirmative defenses, including that Palace had acquiesced in their use of the domain names. But because the defendants had offered no additional evidence since the issuance of the R&R on the motion for a preliminary injunction, the district court adopted the magistrate judge's earlier findings of fact.  Heron and Palace then jointly moved to dismiss all of their other claims, which the district court granted.

At Palace's suggestion, the district court determined that the remaining issues in the case could proceed to a bench trial on briefs alone and instructed the parties to submit trial briefs regarding: (1) Palace's request for a permanent injunction ordering the transfer of the infringing domain names to it; (2) Palace's entitlement to statutory damages under 15 U.S.C. § 1117(d); and (3) whether the case should be considered "exceptional" under 15 U.S.C. § 1117(a) warranting an award of attorneys' fees and costs.  After considering the parties' briefs, the district court entered final judgment ordering the defendants to transfer the domain names to Palace, awarding Palace $400,000 in statutory damages, and determining that Palace was entitled to attorney's fees because the case was "exceptional."  The district court denied Palace's request for a permanent injunction enjoining the defendants from any further infringement of its trademarks.  This is the defendants' appeal.

7

## II.    STANDARD OF REVIEW

We review *de novo* the district court's grant of summary judgment, construing the facts and drawing all reasonable inferences in favor of the nonmoving party.  *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).  Summary judgment is appropriate when a movant shows that there is "no genuine dispute as to any material fact," such that "the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A genuine dispute of a material fact exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Making credibility determinations, weighing the evidence, and drawing legitimate inferences from the evidence are functions of the ultimate finder of fact and not of a judge ruling on a motion for summary judgment. *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

## III.    DISCUSSION

The defendants contend that the district court erred in granting summary judgment to Palace on Count I because the court adopted the magistrate judge's findings of fact, which were made after weighing the evidence presented at the preliminary injunction stage.  By relying on those findings, defendants argue, the district court violated the summary judgment standard, which prohibits the

8

weighing of evidence at the summary judgment stage. We agree with the defendants.

It is clear that, in granting partial summary judgment, the district court relied upon the findings of fact and conclusions of law in the magistrate judge's R&R. *See* Doc. 240 at 17 (stating, without further analysis, that the magistrate judge "thoroughly addressed and dismissed each of these affirmative defenses in his Report and Recommendation on Plaintiffs' Motion for Preliminary Injunction, which this Court adopted" and concluding that "[b]ecause [those] determinations apply with equal force today, Defendants' affirmative defenses fail"). The magistrate judge concluded that the defendants' affirmative defenses were without merit after weighing conflicting evidence the parties presented and making findings of fact. For example, the defendants argued that email exchanges between Vacation Tours and Palace demonstrated Palace's knowledge and consent of the defendants' use of the infringing domain names. In rejecting the affirmative defenses of acquiescence and laches, the magistrate judge discussed the email exchanges before determining that the emails did not evidence Palace's consent to the defendants' continued use of the domain names.

The district court also adopted the magistrate judge's factual findings in determining that the defendants acted with a bad faith intent to profit. A person violates the ACPA and is liable to the owner of a protected mark when he: (1) "has

a bad faith intent to profit from that mark" and (2) "registers, traffics in, or uses a domain name that . . . in the case of a mark that is distinctive . . . is identical or confusingly similar to that mark." 15 U.S.C. § 1125(d)(1)(A).[8] Congress included a list of nine factors that "a court may consider" when determining whether or not the use of a domain name was done with a "bad faith intent to profit." *See id.* § 1125(d)(1)(B)(i)-(ix). The factors include questions such as whether the defendant has other intellectual property rights in the domain name; has ever used the domain name in "connection with the bona fide offering of any goods or services"; has an intent to divert consumers from the mark owner's website to his own, either for commercial gain or with the intent to tarnish or disparage the mark; or whether the defendant acquired multiple domain names that the defendant knows are identical or confusingly similar to distinctive marks. *See id.*

The district court concluded that at least six of the nine factors indicated that the defendants had acted with a bad faith intent to profit and therefore "the evidence overwhelmingly indicates that Defendants registered and used these domain names with a bad-faith intent to profit off of [Palace's] trademarks and corresponding goodwill." Doc. 240 at 15-17. These conclusions appear to have

---

[8] A mark is distinctive when it "serve[s] the purpose of identifying the source of the goods or services." *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357 (11th Cir. 2007). The distinctiveness of the marks is not at issue in this appeal.

10

been based on the magistrate judge's findings and conclusions in the R&R prepared after the magistrate judge conducted an evidentiary hearing.

As Palace conceded at oral argument, the defendants offered evidence probative of whether the defendants acted with a bad faith intent to profit. For example, there was evidence that Palace knew the defendants were using the domain names and did not object. There was evidence that Palace profited, consistent with the wholesaler agreement, from the defendants' use of the domain names. This evidence goes directly to one of the factors that a court may consider in determining whether there was a bad faith intent to profit from the domain names. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(III) (listing as a factor that may be considered "the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services"). Although consideration of the factors is permissive, *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1244 (11th Cir. 2009), the district court was not free to ignore this evidence when considering Palace's motion for summary judgment.

Although the district court's adoption of the R&R's findings of fact was entirely appropriate in deciding the motion for a preliminary injunction, it was impermissible in granting summary judgment. *See Strickland*, 692 F.3d at 1154. The district court therefore erred, and we must reverse the summary judgment in favor of Palace on the ACPA claim.

11

## IV.    CONCLUSION

For the above reasons, we vacate the district court's grant of summary judgment, vacate the district court's final judgment in favor of Palace in its entirety, and remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**